236 P.2d 1029

**STATE v. GEE.**
**No. 1001.**

Supreme Court of Arizona.
Oct. 29, 1951.

An information filed against defendant charged in one count that he practiced chiropractic without having first obtained a license to so do from the State Board of Chiropractic Examiners, and the second count charged him with the crime of practicing healing without a valid certificate in basic sciences.

The facts in the case were stipulated between the state and defendant. The following stipulated facts are pertinent: (1) Defendant took the basic science examination but failed to pass; (2) defendant took the examination given by the State Board of Chiropractic Examiners and passed but was not issued a license because he had failed to pass the basic science examination; and (3) later defendant did commence the practice of chiropractic without the proper certificate and license.

Defendant moved to quash the information on the grounds that the Basic Science Act is unconstitutional.

Before further action on the case, the superior court in its order of certification, asked this court for a determination of the following questions:

"(1) Is Article 2, Chapter 67, A.C.A. 1939, unconstitutional as an unlawful delegation of legislative power to the Arizona State Board of Examiners in the Basic Sciences?

"(2) If the answer to the above question is 'No', is Article 2, Chapter 67, A.C.A. 1939 unconstitutional against persons wishing to practice chiropractic in the State of

Fred O. Wilson, Atty. Gen., Earl Anderson, Asst. Atty. Gen., for plaintiff.

Shortridge & Caruthers, of Phoenix, for defendant.

STANFORD, Justice.

This case has been certified to us by the Honorable Dudley W. Windes, Judge of the Superior Court of Maricopa County, under provisions of section 44–2401, A.C.A.1939.

Arizona as in violation of the due process clause of the Fourteenth Amendment of the Constitution of the United States and in violation of paragraph 3, Article 2 of the Constitution of the State of Arizona?

"(3) Is Article 2, Chapter 67, A.C.A. 1939 unconstitutional as against persons wishing to practice chiropractic in the State of Arizona as in violation of Article 4, paragraph 19, point 13 of the Constitution of the State of Arizona which states that 'No local or special laws shall be enacted in any of the following causes, that is to say; * * * 13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises'?

"(4) Is Article 2, Chapter 67, A.C.A. 1939, unconstitutional as being so ambiguous, indefinite, and contradictory in its terms as to make impossible its intelligent administration for the benefit of the public?"

Article 2, Chapter 67, A.C.A.1939, reads in part as follows:

"67–201. *Basic science defined—Practicing healing and practice of healing defined.*—Wherever the term 'Basic Sciences' is used in this act and not otherwise specifically defined, the same shall be understood and construed to mean and include all matter pertaining to gross anatomy, physiology, pathology, chemistry, bacteriology and hygiene. Wherever the term 'Practicing Healing' or 'Practice of Healing' is used in this act, unless otherwise specifically defined, the same shall be understood and construed to mean and include any person not hereinafter excepted from the provisions of this act who shall in any manner, for any fee, gift, compensation or reward, or in expectation thereof, engage in, or hold himself out to the public as being engaged in the practice of medicine or surgery, the practice of osteopathy, the practice of chiropractic, analysis, treatment, correction or cure of any disease, injury, defect, deformity, infirmity, ailment or affliction of human health or disease, or who shall for any fee, gift, compensation or reward, or in anticipation thereof, suggest, recommend, or prescribe any medicine, diet or any form of treatment, correction or cure therefor; also any person or persons not hereinafter excepted from the provisions of this act who, individually or collectively, maintain an office for the reception, examination, diagnosis or treatment of any person for any disease, injury, defect, deformity or infirmity of body or mind, or who attaches the title of doctor, physician, surgeon, specialist, M.D., M.B., D.C., D.O., N.D., or any other word, abbreviation or title to his name, indicating or designed to indicate that he is in the practice of healing.

"67–202. *Board of examiners in basic sciences.*—There is hereby created and established a board to consist of five (5) members, citizens of the state of Arizona, to be known and designated as The State Board of Examiners in the Basic Sciences.

"67–203. *Members of board—Appointment, terms of office—Vacancies—Oath of*

*office.*—The board of regents of the University of Arizona shall appoint from the professors, associate professors or assistant professors of the faculty of the university, five (5) persons to serve as members of the board of examiners in the basic sciences. The first appointments shall be made as soon as may be practicable after this act shall take effect. * * *

"67–205. *Examinations.*—Examinations will be written and consist of ten (10) questions on each subject and be of such a nature as to constitute an adequate test as to whether the person so examined has such knowledge of the elementary principles of such basic science as is taught at the University of Arizona in one (1) year's instruction of thirty-six (36) weeks, or as is taught in one (1) year's instruction of thirty-six (36) weeks at any college or university accredited by the University of Arizona, or the equivalent thereof."

In answering the first question certified to us we are confronted with the question of the unlawful delegation of legislative powers to the board of examiners. From our case of Marlar v. Patterson, 60 Ariz. 240, 135 P.2d 218, 221, where the court considered the validity of this basic science act, we quote: " * * * This act is nothing more than a requirement that all persons who wish to practice the healing arts in this state must first establish, to the satisfaction of an impartial board of examiners, that they possess at least a rudimentary knowledge of the basic sciences,

* * * and the examining board is composed of faculty members of the state university chosen by the board of regents without regard to the school of healing to which they subscribe. * * * "

The act does not delegate to the board the responsibility of establishing the definition of the basic sciences as defendant contends. Section 67–201, supra, defines the five basic sciences on which applicants are to be examined. Nor does the act delegate legislative authority to the board because no provision is made for examination of applicants or the grading of papers. The matter of selecting questions to be asked and the passing on or grading the papers is purely an administrative duty to be performed by the board. Section 67–205, supra, sets out the general pattern to be followed in the examination of applicants by the board. It is well established that the legislature may set a general standard for the guidance of a board such as was done in the basic science law and then leave the administrative details to the board. In the case of Batty v. Arizona State Dental Board, 57 Ariz. 239, 112 P.2d 870, 874, the court used the following quotation from Borgnis v. Falk Co., 147 Wis. 327, 133 N.W. 209, 219, 37 L.R.A.,N.S., 489: " * * * The legislative branch of the government by statute determines the rights, duties, and liabilities of persons and corporations under certain conditions of fact, and varying as the facts and conditions change. Manifestly the Legislature cannot remain

in session and pass a new act upon every change of conditions; but it may and does commit to an administrative board the duty of ascertaining when the facts exist which call into activity certain provisions of the law, and when conditions have changed so as to call into activity other provisions. The law is made by the Legislature; the facts upon which its operation is dependant are ascertained by the administrative board. * * *'"

See also State v. Hynds, 61 Ariz. 281, 148 P.2d 1000; Dennis v. Jordan, 71 Ariz. 430, 229 P.2d 692; Haggard v. Industrial Commission of Arizona, 71 Ariz. 91, 223 P.2d 915. And from 11 Am.Jur., Constitutional Law, section 240, quoted with approval in Duncan v. A. R. Krull Co., 57 Ariz. 472, 114 P.2d 888, 890: "'The general principle governing the conditions under which the power to make rules and regulations may be delegated has been stated as follows: A legislature in enacting a law complete in itself and designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative commission, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its expressed general purpose. So long as a policy is laid down and a standard is established by statute, no unconstitutional delegation of legislative power is involved in leaving to selected instrumentalities both the making of subordinate rules

within prescribed limits and the determination of facts to which the policy as declared by the legislature is to apply. * *'"

See also Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469. We are of the opinion that these authorities adequately answer the first question and we hold that Article 2, Chapter 67, supra, is not unconstitutional as an unlawful delegation of legislative power to the Arizona State Board of Examiners in the Basic Sciences.

The second question certified to us by the lower court asks that we consider the constitutionality of the basic science act in light of the due process clauses of the Arizona state constitution and the United States constitution.

Defendant makes certain specific contentions regarding this question among which is the following: That the act designates no one to establish a definition of the terms "practice of healing" or "practicing healing" and that no provision is made for notification to applicants at such time as the term "basic science" is specifically defined. Defendant here refers to the provisions of the act defining the above mentioned terms and including the phrase "and not otherwise specifically defined". Apparently defendant has in mind that these provisions indicate that some independent definition may at any time be made. This of course is erroneous as the phrase obviously means that the terms shall re-

main as defined by the provision unless otherwise specifically defined *in the act*. This point we feel needs no further discussion.

Further contention made by defendant complains that no technical qualifications are prescribed by the act for the members of the examining board and the limitations imposed thereon tend to discriminate against chiropractic practice. The provisions of the act provide that the board members shall be members of the faculty of the University of Arizona which in itself embodies certain qualifications. We can hardly conclude that every act establishing a board or committee which fails to specifically enumerate extensive and detailed qualifications for its members is for that reason violative of the constitutional due process clauses, where a general qualification is established in the same act. Often it is not possible for a legislative enactment to so specify in order to secure its most effective operation. And where, as here, the task of determining supplementary standards is placed in the hands of a competent body, we are of the opinion that a party adversely affected by the provisions of the act, cannot be heard to complain of a lack of due process on the ground that all of the detailed qualifications of the board are not set down in the act.

The guarantee of due process is further insured through provisions of the act, section 67–210, A.C.A.1939, providing for an appeal from the board's decision to the superior court. The general theory of due process is stated in 12 Am.Jur., Constitutional Law, section 571: "* * * A general law administered in its legal course according to the form of procedure suitable and proper to the nature of the case, conformable to the fundamental rules of right and affecting all persons alike, is due process of law." Likewise we fail to find anything in the provisions of the act, limiting the appointments of members of the examining board to members of the faculty of the University of Arizona, which tends to discriminate against chiropractors. It is but an additional regulating factor, affecting all applicants equally, and in the final analysis, that the legislature has the power and duty to control and regulate such professions and practices affecting the public health and welfare, is unquestioned.

In the case of State v. Wehinger, 182 Wash. 360, 47 P.2d 35, involving an attack on the Washington Basic Science Law, Rem.Rev.St.Wash. §§ 10185–1 to 10185–8, one of the questions raised was whether a person intending to practice as a chiropractor was deprived of due process because he was required to take an examination in the basic sciences. The Washington statute is identical with the Arizona statute except in Washington they are not required to pass an examination on bacteriology. In deciding the case, the court there held that the basic science law was not unconstitutional as denial of liberty and due process of law. Also in People v. Lewis, 233 Mich. 240, 206 N.W. 553, 42 A.L.R. 1337, the Michigan

Supreme Court upheld an act regulating the practice of the system of chiropractic and held that one desiring to practice that system is not deprived of the equal protection of the laws by requiring him, as a condition for securing a license, to pass an examination in anatomy, histology, embryology, physiology, chemistry, bacteriology, pathology, diagnosis, hygiene, and public health. It will be observed that act contained more subjects in which a chiropractor is required to be reasonably proficient than our basic science law. This law was upheld despite the fact that it was shown that such subjects were not taught in chiropractic schools. We hold therefore that the act is not unconstitutional as violating the due process clauses of the Arizona and United States constitutions.

■ We will now answer the third question submitted for our determination, being an inquiry as to whether or not the act is unconstitutional as being in violation of Art. 4, pt. 2, § 19, subpar. 13 of the constitution of Arizona, which states that "No local or special laws shall be enacted in any of the following cases, that is to say: * * 13. Granting to any corporation, association, or individual, any special or exclusive privileges, immunities, or franchises." From State v. Broden, 181 Minn. 341, 232 N.W. 517, in which the court ruled upon the constitutionality of the Basic Science Act of Minnesota, M.S.A. §§ 146.01–146.22, being very similar to the one at hand, we quote: "* * * The law deals with a subject which concededly is within legislative regulation and control by virtue of the police power of the state. The statute is not special legislation, but general, for it embraces the whole state and operates upon all persons residing therein who undertake to alleviate or cure bodily ills or injuries. Therefore it does not fall within the prohibition contained on the first sentence of section 33, art. 4, and the only clause in the specific subjects withdrawn by the rest of the section from special legislation which might be claimed applicable is: 'Granting to any corporation, association or individual any special or exclusive privilege, immunity or franchise whatever.' Chapter 149 does not grant or give anything, it restricts or regulates a vocation. * * *" We hold therefore that the act is not unconstitutional as being in violation of Art. 4, pt. 2, § 19, subpar. 13, of the constitution of Arizona, supra.

■ Regarding the final question certified to us, questioning the constitutionality of the act on the basis of ambiguity, contradiction of terms and indefiniteness, we are of the opinion that the legislature has sufficiently and adequately defined the terms used in the basic science act. It speaks for itself. We hold therefore that the act is not unconstitutional as being ambiguous, indefinite and contradictory in its terms.

The four questions certified to us are all answered in the negative.

UDALL, C. J., and PHELPS, DE CONCINI and LA PRADE, JJ., concur.