588 P.2d 313

**Leonard M. COHEN, Appellant,**

v.

**STATE of Arizona, State of Arizona Board of Psychologist Examiners, and Virginia K. Maresca, Chairman, Harriet Beck, Nancy Kerr, Wallace Diers and James Biglin, Appellees.**

**No. 1 CA–CIV 3164.**

Court of Appeals of Arizona,
Division 1,
Department C.

Dec. 6, 1977.

Rehearing Denied Jan. 31, 1978.

Review Granted April 11, 1978.

Shoob & Zalut by Henry L. Zalut, Phoenix, for appellant.

Bruce E. Babbitt, Atty. Gen. by J. Michael Low, Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

FROEB, Chief Judge, Division 1.

This case involves the effort of appellant to obtain certification in Arizona as a psychologist. In our review of the record and our analysis of the laws and rules relating to certification, we conclude that appellant has been incorrectly denied certification because parts of the certification statutes are unconstitutionally vague and ambiguous and because the Board of Psychologist Examiners has misinterpreted its own rules and the remaining valid portions of the statutes.

A synopsis of the law involved in this appeal seems appropriate at this point. Title 32 (Professions and Occupations), Chapter 19.1 of the Arizona Revised Statutes was passed by the legislature in 1965 and, together with amendments, is found in sections 32–2061 through 32–2087. The laws establish a Board of Psychologist Examiners (§ 32–2062); define certain terms (§ 32–2061); provide the Board with rule-making powers (§ 32–2063); establish qualifications and procedures for certification as a psychologist (§§ 32–2071 through 32–2074); regulate the conduct of certified psychologists (§ 32–2081); provide for hearings (§ 32–2082); recognize certain exemptions (§ 32–2083); bar the practice of medicine by psychologists (§ 32–2084); recognize privileged communications (§ 32–2085), and provide criminal sanctions for certain conduct (§ 32–2087).

We are most directly concerned in this case with the provisions relating to certification found in A.R.S. §§ 32–2071 and 32–2072.[1] Paragraph 1(c) of § 32–2071 sets forth the academic and degree requirements for certification as a psychologist. It furnishes a standard in general terms which the Board can make more specific by rules enacted under its rule-making power. No professional experience of a given number of years is necessary to meet these qualifications; presumably, a recent graduate with the required academic achievements can obtain certification, provided the academic "credentials" measure up to standards established by the Board.

Section 32–2072 provides, in paragraph D, that if an applicant has three years of professional experience in addition to a satisfactory academic background, "the board shall waive" the credentials examination. Nevertheless, paragraph D requires that an applicant in this category have an academic background equivalent to that of an applicant without three years of professional experience. The only difference is that the applicant need not pass the "credentials examination."

We shall have more to say about this anomaly; suffice it to state here that the added factor of three years of professional experience has very little impact in the certification process and may well be meaningless under the present statutory scheme.

We turn to the qualifications presented by appellant to the Board. He holds a doctorate of social science (D.S.Sc.) awarded in 1948 by the New School for Social Research located in New York state. The evidence indicates that a Ph.D. is the normal prerequisite for admission to the program at the New School for Social Research but that the Ph.D. requirement was waived because of appellant's experience and credits. He entered the New School for Social Research after earning an undergraduate degree at Clark University and a master's degree in psychology at the University of Pittsburgh. As his doctorate degree from the New School for Social Research was awarded in social science, appellant sought certification on the basis that his academic

---

1. A.R.S. § 32–2071 provides:

The board shall issue a certificate as psychologist to any person who:
1. Submits evidence verified by oath and satisfactory to the board that he:
(a) Is of good moral character.
(b) Is a citizen of the United States or has legally declared his intention of becoming such a citizen.
(c) Has received the doctoral degree based on a program of studies the content of which was primarily psychological, or the substantial equivalent thereof in both subject matter and extent of training, obtained from an educational institution having a graduate program accredited by the American psychological association, or where the educational institution has been approved by the north central association of colleges and secondary schools, or by any accrediting agency recognized by the board of regents.
2. Pays the fee for an original application as prescribed in § 32–2074.
3. Passes a satisfactory credentials examination in psychological preparation as described in § 32–2072.
A.R.S. § 32–2072 provides:
A. Examinations for applicants under this chapter shall be held by the board twice each year. The examination shall consist of an evaluation of credentials submitted by the applicant to determine adequacy of training and experience.
B. An applicant whose credentials examination is found to be unsatisfactory may request a hearing before the board. Such a hearing shall be requested within sixty days of the time of notification that his credentials examination is unsatisfactory. A decision on such hearing shall be rendered within sixty days after completion of the hearing.
C. An applicant who fails the credentials examination may register for another examination. Each reapplication shall be accompanied by the reappliction fee as prescribed in § 32–2074.
D. The board shall waive the examination requirement as prescribed by this article and shall grant a certificate upon payment of the fee as prescribed in § 32–2074, provided the applicant meets the qualifications prescribed in § 32–2071, paragraph 1, subdivisions (a) and (b), and has a doctoral degree or equivalent thereof from an institution accredited, as provided in § 32–2071, paragraph 1, subdivision (c), at the time the degree was granted, based on a program of studies the content of which is primarily psychological, or the substantial equivalent thereof in both subject matter and extent of training, and in addition has had three years of professional experience satisfactory to the board.

training and his degree were the "substantial equivalent" of a "doctoral degree based on a program of studies the content of which was primarily psychological." *See* § 32–2071 and § 32–2072.

Appellant's original application for certification was considered by the Board of Psychologist Examiners on December 14, 1973. It was denied on the ground that his academic training was inadequate. A hearing before the Board, requested by appellant pursuant to § 32–2072(B), was held on March 1, 1974. The Board evaluated the courses shown on appellant's school transcripts as to whether they fell within the area of psychology. Since the Board found the course titles inconclusive, it asked appellant to contact the schools and obtain descriptions for those courses which he claimed should be categorized as psychological. At a later meeting held on August 7, 1974, the Board considered the materials submitted by appellant and made specific findings concerning the allowed and disallowed course credits.[2] The superior court

---

2. The following "answers" to questions propounded to the State Board of Psychologist Examiners constitute the "findings" of the Board relating to the academic credentials of Leonard M. Cohen:

Question 1 Courses Mr. Cohen was given credit for: listed by Universities and amount of credit given.

| a) University of Pittsburgh: | Credits |
|---|---|
| Psych-Pre-School Child Evaluation | 2 |
| Psych-Statistical Methods | 2 |
| Psych-Tests for Special Aptitude | 2 |
| Psych-Psychological-Educational Adjustment of Exceptional Child | 2 |
| Psych-Individual Psych. Techniques | 2 |
| Psych-Animal | 2 |
| Psych-Residency | 2 |
| Psych-Thesis | 3 |
| Psych-Statistical Methods | 2 |
| Psych-Current Psych. Literature | 2 |
| Psych-Individual Psych. Technique | 2 |
| Psych-History and Principles | 2 |
| Psych-Internship | 2 |
| Psych-Thesis | 3 |
| Psych-Field Work in Psychology | 3 |
| Total | 33 |

| b) New School for Social Research: | Credits |
|---|---|
| Basic Problems in Psychology II; Motivation the Group, Personality. | 2 |
| Introduction to Psychodynamics and Projective Techniques | 2 |
| History of Psychology | 2 |
| Seminar in General Psychology | 1 |
| Total | 7 |

Note: These were credits originally granted, the following credits were granted after receipt of another transcript from the University of Pittsburgh.

| c) University of Pittsburgh: | Credits |
|---|---|
| Psych-Social Psychology | 2 |
| Psych-Abnormal | 2 |
| Psych-Current Psych. Literature | 2 |
| Psych-Tests for Special Aptitudes | 2 |
| Psych-Individual Psych. Techniques-Verbal | 2 |
| Psych-Advanced Statistics | 1 |
| Psych-Abnormal | 2 |
| Psych-Individual Psychometric Techniques | 2 |

| c) University of Pittsburgh:—Cont'd | Credits |
|---|---|
| Psych-Training Problems in Business and Industry | 2 |
| Psych-Advanced Statistics | 1 |
| Psych-Introduction to Psychological Diagnosis and Professional Techniques | 2 |
| Psych-History of Psychology | 2 |
| Psych-Seminar in General Psych. | 1 |
| Total | 23 |

Total credits granted: 63 in courses judged to be in areas considered psychological.

Following were courses Mr. Cohen was not granted credit for, because they were judged not to be in the area of psychology.

| a) University of Pittsburgh: | Credits Not Granted |
|---|---|
| Math-Theory of Statistics | 3 |
| Industry-Lab Problems E121 | 2 |
| Industry-Industry E101 | 2 |
| Industry-Personnel Management E123 | 2 |
| Industry-Industrial Relations E122 | 2 |
| Industry-Personnel Management E124 | 2 |
| Economics-Comparing Economic System SS113 | 2 |
| History-Peoples of Three Continents: Europe, Asia and Africa | 2 |
| Chemistry-Organic 31 | 4 |
| Chemistry-Organic 32 | 4 |
| Physics-General | 4 |
| Physics-Engineering | 5 |
| Chemistry | 4 |
| English | 3 |
| Greek | 3 |
| Oriental | 1 |
| Political Science | 3 |
| Physical Education | 1 |
| Chemistry | 4 |
| English | 3 |
| Greek | 3 |
| Oriental | 1 |
| Political Science | 3 |
| Physical Education | 1 |
| Classics | 1 |
| Economics | 3 |
| English | 3 |
| Greek | Withdrew |
| Greek | 2 |
| Psych | 3 |
| Speech | 3 |
| Economics | 3 |

▮▮▮▮▮▮▮▮▮▮

| a) University of Pittsburgh:—Cont'd | Credits Not Granted |
|---|---|
| English | 3 |
| Psych | 3 |
| Speech | 3 |
| Classics-Greek Literature in English | 2 |
| Philosophy-Ded. & Logic | 2 |
| Psych-Experimental | 4 |
| Psych-Ed (Mental & Social Measure) | 2 |
| Sociology-Introduction | 3 |
| Classics-Greek Literature in English | 2 |
| Psych-Experimental | 4 |
| Psych-Psychological Tests | 2 |
| Psych-In relation to Psychiatry | 2 |
| Sociology-Introduction | 3 |
| Psych-Mental Hygiene & Problems in Person | 2 |
| Psych-Psychology of Business | 2 |
| Speech-Discussion Methods | 2 |
| Biology-General | 4 |
| French-Elementary | 3 |
| German-Elementary | 3 |
| Math-Trigonometry, Albegra & Geometry | 4 |
| Psych-Advanced Experimental | 3 |
| Psych-Developmental | 3 |
| Biology-General | 4 |
| German-Elementary | 3 |
| Math-Fr. Math | 4 |
| Psych-Advanced Experiments | 5 |
| Psych-Measure of Personality Traits | 2 |
| | 159 |

| b) Indiana University: | Credits Not Granted |
|---|---|
| Graduate School of Division of Social Service: Social Welfare Organization | 3 |
| Social Case Work I | 2 |
| Health & Disease | 3 |
| Understanding Human Behavior | 2 |
| Field Work I | 5 |
| Field Work II | 5 |
| Social Case Work II | 2 |
| Psychopathology | 2 |
| Public Welfare I | 3 |
| Social Group Work I | 2 |
| Social Service and the Schools | 2 |
| Social Case Work III (Medical) | 2 |
| Methods of Social Research | 3 |
| Field Work III | 5 |
| Social Case Work IV | 2 Withdrew |
| Children in Foster Care | 2 Withdrew |
| The Patient and His Care | 2 Withdrew |
| Public Welfare II | 2 Withdrew |
| Research Seminar | 2 Withdrew |
| Field Work IV | 5 Withdrew |
| Withdrew 10–19–54 | 41 Finished |

| c) Clark University: | Credits Not Granted |
|---|---|
| Biology-General | 1 |
| English-Composition | 1 |
| German-Elementary | 1 |
| Psych-General | 1 |
| Sociology-Principles | 1 |
| English-The Modern Novel | ½ |
| Biology-General Physiology | Auditor |
| Biology-Mech. or Reaction | 1 |
| German-Second Year | 1 |
| Psych-Social Psych | ½ |
| Psych-Industrial Psych | ½ |

| c) Clark University:—Cont'd | Credits Not Granted |
|---|---|
| Psych-Child Psych | ½ |
| Music-Survey Course | ½ |
| Psych-Special Honors Work | ½ |
| Psych-Dynamics of Abnormal Behavior | Withdrew |
| Math-Freshman Math | ½ |
| Math-Algebra and Trig. | ½ |
| German-Third Year | 1 |
| Psych-Experimental | ½ |
| Psych-Guidance of Adolescents | 1 |
| Psych-Statistical Methods | ½ |
| Psych-Tests and Measurements | 1 |
| Psych-Honors Work | 1 |
| Psych-Honors Work | ½ |
| Psych-Industrial and Military Morale | ½ |
| | 17 |

| d) New School for Social Research: | Credits Not Granted |
|---|---|
| Seminar: Advanced Research | 3 |
| General Seminar: Current Problems of the Social Sciences | Auditor |
| Labor Problems | 3 |
| Seminar Social Security | 3 |
| Current Labor Events | 3 |
| Sociology of Labor | 3 |
| History of Sociology II: Sociology as a Discipline in the History of Ideas | 3 |
| Social Change | 3 |
| Labor Law | 2 |
| Advanced Research | 3 |
| Total | 26 |

Note: Credits were not granted for undergraduate courses and graduate courses taken for undergraduate bachelor's degree at Clark University and the University of Pittsburgh. No credit was granted for courses at Indiana University because they were in the graduate school of Social Science which is interpreted to mean social work and not psychological in nature. Any course listed as *Psych* at the University of Pittsburgh and Clark University taken for the bachelor's degree are undergraduate hours.

Questions 4 and 5 [There are no questions 2 and 3.] Mr. Cohen received no credit for his "credentials" or past experience in that the requirement of a minimum three years experience is in addition to the granting of a doctoral degree, based on a program of studies the content of which is primarily psychological.

Original Credits Granted:

| | |
|---|---|
| University of Pittsburgh Degree, M.S. | 33 |
| New School for Social Research | 7 |
| Total | 40 |

Credits granted after receiving course descriptions:

| | |
|---|---|
| University of Pittsburgh Degree, M.Litt. | 23 |
| Total | 63 |

Total of all credits granted: 63

This does not meet the requirement of 65% of the courses being clearly psychological.

Note 1) At the New School for Social Research Mr. Cohen's major is designated as sociology, not psychology.

Note 2) The title of the applicant's thesis for the degree D.D.Sc. was entitled "A Critical Study of Job Evaluations" and was judged by the Board to not in any way qualify as being psychological in nature, although appearing to be appropriate for his degree in sociology.

denied a trial de novo and, after its review, rejected appellant's claims and affirmed the order of the Board.

Appellant presents several issues, each of which he contends requires reversal of the decision of the Board of Psychologist Examiners and the judgment of the superior court. In general, these questions relate to (1) the constitutionality of the statutes providing for certification; (2) the validity of rules of the Board; (3) the application of the statutes and the rules by the Board, and (4) the composition of the Board of Psychologist Examiners. We take them up in that order.

*Do A.R.S. § 32–2071 and § 32–2072 Violate Due Process of Law Because They are Vague and Ambiguous?*

■ Appellant contends that A.R.S. § 32–2071 and § 32–2072 are so vague and ambiguous that they cannot be understood and they, therefore, deny an applicant for certification due process of law under the state and the federal constitutions. After careful study of these statutes, we partially agree. The certification statutes are set forth in footnote 1.

The statutes involved appear to provide two avenues to certification. One, set forth in § 32–2071(1)(c), is purely academic and the other, set forth in § 32–2072(D), is academic and professional. It would be reasonable to assume that the three years of professional experience called for in § 32–2072(D) would enable applicants having the required experience to be certified with lesser academic credentials than those seeking certification under § 32–2071(1)(c). Otherwise, there would be no purpose to § 32–2072(D). Yet, read literally, § 32–2072(D) requires similar, if not identical, academic credentials. The vagueness and ambiguity present in § 32–2072(D), therefore, makes certification uncertain and speculative for an applicant having three

years of professional experience and, thus, denies him due process of law. The case of appellant demonstrates this. His professional experience, far exceeding three years, was never an issue in the case.[3]

Section 32–2072(D) requires a doctor's degree or its equivalent. Yet, that is also what § 32–2071(1)(c) requires. In each case we construe the statute to mean that the degree or its equivalent must be based on "a program of studies the content of which was primarily psychological." If the doctor's degree or its equivalent may be based on a program which is not "primarily psychological" but which is substantially equivalent "in both subject matter and extent of training," then it is wholly unclear what this program might be.

We think our reading of § 32–2071(1)(c) is what was intended by the legislature. We do not understand the provision to require a doctor's degree and only a doctor's degree. We read it to allow the substantial equivalent of a doctor's degree so long as the content is "primarily psychological." In the context of a statute authorizing certification of psychologists, it would be illogical to require a doctor's degree but permit it to be something less than "primarily psychological."

Another vague and ambiguous provision is that which relates to the "credentials examination." Section 32–2072(A) describes the examination to be for the purpose of determining the "adequacy of training and experience." Since the examination is "waived" as to an applicant who would seek certification based on three years of experience, it is wholly uncertain how the "experience" of an applicant under § 32–2071(1)(c) should be evaluated if he is not required to have experience (unless it is to examine whatever "experience" the applicant may have obtained in satisfaction of academic criteria required for certification).

**3.** Appellant's postdoctoral experience in the field of psychology spans a period of over 25 years. During this time he has taught psychology at various levels in the United States and abroad, established the curricula at various schools and acted as the chairman of the department of psychology at two universities. He has worked extensively both as a clinical psychologist and as a consultant in psychology in the United States and in foreign countries. He has held memberships in numerous professional organizations relating to psychology and is the author of some fifty publications in the field.

Moreover, the concept of waiving the credentials examination for applicants seeking certification under § 32–2072(D) is illogical since it would seem all the more compelling to evaluate work experience and academic training under an alternate certification which is not based on academic qualifications alone. While it is not our function to question the wisdom of such a law, the legislative intent is shrouded in vagueness and ambiguity.

In summary, we think it is impossible to determine the legislative intent, as it relates to criteria for certification, in paragraph 3 of A.R.S. § 32–2071 and paragraphs A and D of A.R.S. § 32–2072. It follows that a psychologist would likewise be unable to tell what is required for certification. Reluctant as we are to find that ambiguities in legislation rise to the level of unconstitutionality, we cannot salvage these portions of the certification statutes by judicial interpretation, for to do so would itself be legislation which is not our function. We are well aware of the difficulty facing the legislature in setting out the qualifications for professional practice in the field of psychology. See, for example, our opinion in *Bilbrey v. Industrial Commission,* 27 Ariz.App. 473, 556 P.2d 27 (1976). Nevertheless, the matter cannot be left either to the courts or to the Board of Psychologist Examiners, as the matter is one for the legislature.

A statute denies due process of law in violation of the fourteenth amendment of the United States Constitution and article 2, § 4 of the Arizona Constitution when it is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *Southwest Engineering Co. v. Ernst,* 79 Ariz. 403, 291 P.2d 764 (1955); *State v. Cota,* 99 Ariz. 233, 408 P.2d 23 (1965). In *State Compensation Fund v. De La Fuente,* 18 Ariz.App. 246, 501 P.2d 422 (1972), we quoted 82 C.J.S. *Statutes* § 64 (1953):

> An act must be complete in all its terms when it leaves the legislature; so that those charged with the administration of such act are amenable to the courts for

failure to put it into effect or for its maladministration, and so that everyone may know by reading the law what his rights are and how it shall operate when put into execution; and the court cannot supply material and essential omissions.

We think this statement is fitting to our determination that paragraph 3 of A.R.S. § 32–2071 and paragraphs A and D of A.R.S. § 32–2072 are unconstitutionally vague and ambiguous.

*Do A.R.S. § 32–2071 and § 32–2072 Constitute an Unlawful Delegation of Legislative Authority to an Administrative Agency?*

It is well established that the legislature may not delegate its power to make laws to any other person or body, except when authorized by the Constitution. *Crane v. Frohmiller,* 45 Ariz. 490, 45 P.2d 955 (1935). Nevertheless, where the legislature declares policies and fixes primary standards by statute, it may validly confer on administrative officers power to fill in the details by prescribing rules to promote the spirit of the legislation and its complete operation. *Employment Security Commission v. Arizona Citrus Growers,* 61 Ariz. 96, 144 P.2d 682 (1944); *State v. Gee,* 73 Ariz. 47, 236 P.2d 1029 (1951). A statute which gives unlimited regulatory power to a commission, board or agency with no prescribed restraints or criterion or guide to action offends the Constitution as an unlawful delegation of legislative power. *State v. Marana Plantations,* 75 Ariz. 111, 252 P.2d 87 (1953). But the legislature may delegate a large measure of authority to an administrative agency for administration of a statute enacted pursuant to the state's police power, and the standards for the exercise of such authority need not be set forth expressly if they may reasonably be inferred from the statutory scheme. *State v. Arizona Mines Supply Co.,* 107 Ariz. 199, 484 P.2d 619 (1971).

Appellant contends that the statutes in question offend the rule against delegating legislative power because they are to broad. He argues that giving the Board

power to define which programs of studies are "primarily psychological" and which are "substantially equivalent" to a doctorate violates the constitutional doctrine. We disagree. It is a proper administrative function to give this terminology meaning and definition through appropriate rules inasmuch as these details are peculiarly within the expertise of the Board. *National Psychological Ass'n v. University of New York,* 8 N.Y.2d 197, 203 N.Y.S.2d 821, 168 N.E.2d 649 (1960).

Appellant refers us to a decision of the Florida Supreme Court which held that similar powers given to the Florida Board of Examiners of Psychology constituted an unlawful delegation of legislative authority. *Husband v. Cassel,* Fla., 130 So.2d 69 (1961). Specifically, the court found that the unlimited power to examine without guidelines, to determine which universities were approved as to their degree and to decide what constituted "an equivalent degree" in the field of psychology, all violated the constitutional principle requiring the legislature to fix standards. In view of our determination that portions of the Arizona law are unconstitutional on other grounds, we will not undertake to dwell on the unlawful delegation issue except to say that, under Arizona law, we do not find objectionable the power given to the Board to define the meaning of the phrases "primarily psychological" and "substantial equivalent of a doctoral degree."

■ To summarize our holding on the issue of constitutionality, we find paragraph 3 of A.R.S. § 32–2071 and paragraphs A and D of A.R.S. § 32–2072 to be vague and ambiguous and, therefore, unconstitutional as denying appellant due process of law in obtaining certification. In so deciding, we uphold the remaining paragraphs of § 32–2071 and § 32–2072 under both the Arizona and the United States constitutions. This holding will allow the Board to continue to certify applications as psychologists on the basis of academic background but will bar consideration of professional experience as a factor unless the legislature enacts new legislation so providing. It will prohibit the giving of the "credentials examination" set forth in the statute, but not the making of such inquiry as may be necessary to determine the adequacy of academic achievements set forth in § 32–2071(1)(c). We do not reach the question of whether a statute providing for certification only on the basis of academic background is a denial of due process when applied to an applicant who has had significant experience in the field but who fails to meet the academic criteria.

*Based upon the Present Record is*
*Appellant Entitled to Certification*
*under A.R.S. § 32–2071(1)(c)?*

■ The course credits listed in footnote 2 show that appellant has pursued a full academic career. Nevertheless, he does not possess a doctorate in psychology. Since appellant does not have "[a] doctoral degree based on a program of studies the content of which was primarily psychological," he sought equivalency certification. To a large extent the proceedings before the Board were devoted to investigation of the content of the courses taken by appellant to determine if the courses fell within the field of psychology or some other academic discipline. Numerous courses of a psychological nature were discounted by the Board because they were taken by appellant while earning his undergraduate degree (see the note appearing just before question 4 in the findings of the Board which are set forth in footnote 2). Moreover, in determining the percentage that the allowed credits in the psychological area bear to the total credits earned by appellant, the Board, instead of using 90 semester hours, used the total of all credits earned by appellant as the divisor. We shall elaborate upon this, but the effect is to penalize an applicant who, in addition to completing the minimum requirements, has pursued his general education further and taken courses in other fields of study.

Rules 1 and 2 of the Board in effect during the proceedings before the Board [4] must be considered at this point, since the Board determined that appellant failed to meet the standards which they establish.

Rule 1 purports to define a program as "primarily psychological" if 65 per cent of the credits are either "in a department of psychology" or are "essentially psychological." *Although the rule does not expressly* state whether these criteria are to apply to an application based upon substantial equivalency as well as to an application based upon a doctoral degree in psychology, it is apparent that the Board used these criteria in evaluating the substantial equivalency application submitted by appellant. For purposes of this appeal we shall accept these criteria and apply them ourselves.

Rule 2 purports to define "substantial equivalency" and is thus essential to understanding the action taken by the Board in this case.[5] It is clear that a master's degree from an accredited institution is required. Appellant has this. It is also clear that the applicant must have a total of 90 semester hours' course work, which includes the hours earned toward the master's degree. Appellant has this and considerably more. The rule also requires "appropriate practicum of research experience." There is no issue concerning this.

We *now return* to the requirement of Rule 1 discussed earlier that 65 per cent of

the courses be "primarily psychological." We must ask, 65 per cent of what? We shall assume, without deciding, that the number to be used as the divisor should only include courses of study pursued after obtaining the undergraduate degree.[6] According to the findings of the Board appellant was granted 63 credits toward certification. See footnote 2. He clearly has *earned more than 90 credits for academic* work pursued after obtaining his undergraduate degree. The issue, then, is whether, in arriving at the 65 per cent necessary for certification, it is appropriate for the Board to use as a divisor any number greater than 90. We hold that it would not be appropriate, since to do so would defy common sense and logic and, as we have previously said, penalize an applicant who has taken *more courses than the minimum re-quired.* Therefore, under Rule 2 the correct divisor is 90, the correct dividend is 63 based on the findings of the Board, and the resulting quotient is 70. Seventy per cent under the rules of the Board entitles appellant to certification so long as the requirements of paragraphs 1(a) and 1(b) of § 32–2071 are satisfied. We, therefore, reverse the judgment of the superior court and direct it to enter a new judgment that appellant has complied with A.R.S. § 32–2071(1)(c).

Since we have determined that appellant has satisfied the requirements of Rules 1 and 2, it is not necessary in this case to

4. Rule 1 (now R4–26–01) provides:

Primarily psychological, as used in A.R.S. § 32–2071, shall be interpreted to mean a program 65% or more of which is in a department of psychology or in other depart-ments *if the content of the course as deter-*mined by the Board is essentially psychological.

Rule 2 (now R4–26–02) provides:

Equivalent of a doctoral degree, as used in A.R.S. § 32–2072(D)(1), shall be interpreted to be a master's degree from an institution accredited as provided in A.R.S. § 32–2071(1)(D), [*sic*] plus sufficient semester hours of credit to bring the total to 90 semester hours' course work, which shall include appropriate practicum of research experience.

5. The paragraph reference in the rule is confusing. Prior to 1974 the correct reference was to

paragraph (D)(1) of A.R.S. § 32–2072. In 1974, the statute was amended without altering its substance by deleting the reference to subparagraph 1 of paragraph D. The correct designation now would be A.R.S. § 32–2072(D). More *important, however, is the flaw in the rule* which refers only to the substantial equivalency language of A.R.S. § 32–2072(D) but not to the substantial equivalency language of A.R.S. § 32–2071(1)(c). We can only conclude that Rule 2 defines substantial equivalency in both statutes.

6. The assumption itself is fully open to question. Neither the statute nor the rules express-ly so provide. It can be argued that undergrad-uate psychology courses should be included, particularly where, as here, the applicant has taken graduate courses in psychology while an undergraduate.

consider whether either rule suffers from constitutional or legal infirmity.

■ Two additional issues remain for brief mention. The first is whether the Board of Psychologist Examiners was legally constituted when it acted upon appellant's application. It is clear from the record that the issue was not timely raised in the trial court and, thus, we will not consider it on appeal. The second is whether appellant has standing to raise the issue of constitutionality when he seeks affirmative relief under the statutes in question. We hold in these circumstances that he does.

Reversed and remanded.

OGG, J., concurs.

JACOBSON, Judge, concurring in part; dissenting in part:

In order to isolate my disagreement with the majority, it is necessary to point out the areas where we do agree.

The pertinent portions of the two statutory sections under consideration are set forth for comparison:

A.R.S. § 32–2071 provides in part:

"The board shall issue a certificate as psychologist to any person who:

\*   \*   \*   \*   \*   \*

"(c) Has received the doctoral degree based on a program of studies the content of which was primarily psychological, or the substantial equivalent thereof in both subject matter and extent of training, obtained from an educational institution having a graduate program [accredited by certain specified organizations.]

\*   \*   \*   \*   \*   \*

"3.   Passes a satisfactory credentials examination in psychological preparation as described in § 32–2072."

A.R.S. § 32–2072(D) provides in part:

"D.   The board *shall waive the examination requirement* as prescribed by this article and shall grant a certificate .   . provided the applicant .   .   . has a doctoral degree or equivalent thereof from an institution accredited, as provided in § 32–2071, paragraph 1, subdivision (c), at the time the degree was granted, based on a program of studies the content of which is primarily psychological, or the substantial equivalent thereof in both subject matter and extent of training, and in addition has had three years of professional experience satisfactory to the board." (emphasis added)

Simply looking at the credentials examination and its waiver, it is apparent the statutory scheme provides a ludicrous and unworkable method of certification.

First, this "examination" only applies to applicants seeking certification under A.R.S. § 32–2071(1)(c) (academic qualifications only). The "credentials examination" does not require the applicant to take additional tests, for A.R.S. § 32–2072(A) simply provides that, "The examination shall consist of an evaluation of credentials submitted by the applicant to determine adequacy of training and experience." Apparently, the board merely reviews the applicant's educational history and internship to determine whether the PHD in psychology was obtained by taking the prerequisite psychological courses.[1]

This credentials examination shall be "waived" by the board under A.R.S. § 32–2072(D) if the applicant has three years of professional experience "satisfactory to the board" plus has taken courses in an accredited graduate program the content of which is "primarily psychological." How the board is able to determine whether an applicant with three years professional experience has taken graduate courses which are "primarily psychological" without examining the applicant's college credentials

---

1. The board by rule has determined that "primarily psychological" as used in A.R.S. § 32–2071 means "a program 65% or more of which is in a department of psychology or in other departments if the content of the course as determined by the Board is essentially psycho-logical." Whether this rule means anything is doubtful, for in the final analysis, it appears the board, apparently subjectively, must determine whether the course is "essentially psychological." The validity of this rule is not directly before us.

is simply beyond me. Obviously, the same type of board evaluation is contemplated for § 32–2072(D) applicants as is required for § 32–2071(1)(c) applicants and the statutory concept of "waiver" of that evaluation is ridiculous.

Aside from this glaring inadequacy, the § 32–2072(D) applicant must present three years professional experience "satisfactory to the board." In my opinion, this is an unconstitutional delegation of authority to the board as not even general statutory guidelines are provided to determine what would be "satisfactory." *See, Hernandez v. Frohmiller*, 68 Ariz. 242, 204 P.2d 854 (1949); *State Personnel Commission v. Webb*, 18 Ariz.App. 69, 500 P.2d 329 (1972). While the issue of appellant's professional experience was not an issue in this case, since the majority holds A.R.S. § 32–2072(D) unconstitutional which is going to require the legislature to rewrite that section if certification of psychologists based on work experience is to remain viable, it is important to point out additional constitutional infirmities.

I also agree with the majority that the use of the term "doctoral" in both § 32–2071(1)(c) and in § 32–2072(D) is confusing and ambiguous. In short, whatever hook you desire to hang your hat on, A.R.S. § 32–2072(D) is unconstitutional.

It is at this point that I have my first major disagreement with the majority. The majority opinion holds that § 32–2071(1)(c) is severable from the unconstitutional portions of the statute. (The severability issue will be dealt with later.) The majority then interprets A.R.S. § 32–2071(1)(c) to mean that certification under that statute can be given to applicants who not only have PHD's in psychology but also to applicants who have a "substantial equivalent" of the doctorate.

The cardinal rule of statutory interpretation is to determine legislative intent. *Adams v. Bolin*, 74 Ariz. 269, 247 P.2d 617 (1952); *City of Phoenix v. Yates*, 69 Ariz. 68, 208 P.2d 1147 (1949). While I readily admit that attempting to ascertain the legislative intent from this garbled piece of legislation is difficult, I am of the opinion that what the legislature intended to do, and with which the majority agrees, was to allow a two-step process for certification— one based on academic credentials and the other based on lesser academic achievements, but complemented by professional experience. That the legislature did not constitutionally accomplish the second step has already been spoken to. The first step, however, remains, and the academic qualifications required before an applicant may trod on that step is that "*[the applicant] has received the doctoral degree* based upon a program of studies the content of which is primarily psychological . . . ."

By interpreting A.R.S. § 32–2071(1)(c) to allow certification of applicants holding less than a doctoral degree, the majority is permitting under that section what the legislature obviously intended to be permitted under A.R.S. § 32–2072(D). In short, if the majority's interpretation is correct, there would have been no necessity for the legislature to even attempt to enact A.R.S. § 32–2072(D). This appears to me to be contrary to any legislative intent that can be gleaned from this statute.

I am bolstered in this conclusion by a comparison of the language of these two sections. A.R.S. § 32–2071(1)(c) in pertinent part provides:

"Has received the doctoral degree based on a program of studies the content of which was primarily psychological, *or the substantial equivalent thereof* in both subject matter and extent of training . . . ." (emphasis added)

A.R.S. § 32–2072(D) provides in pertinent part:

". . . has a doctoral degree *or equivalent thereof* . . . based on a program of studies the content of which is primarily psychological, *or the substantial equivalent thereof* in both subject matter and extent of training . . . ." (emphasis added)

In my opinion, the phrase "or the substantial equivalent thereof" as used in A.R.S. § 32–2071(1)(c) has the same mean-

ing as it does in A.R.S. § 32–2072(D), that is, it modifies "program of studies" rather than "doctoral degree."

I must therefore conclude that certification under A.R.S. § 32–2071(1)(c) is limited to those who hold a PHD in psychology, the equivalency being reserved to A.R.S. § 32–2072(D).

If my interpretation is correct, that is, only applicants holding a doctoral degree in psychology are entitled to certification under A.R.S. § 32–2071(1)(c) and the appellant not having such a degree, the judgment of the trial court denying certification must be affirmed.

However, I have a more basic disagreement with the majority and that is the severability of A.R.S. § 32–2071(1)(c) from the unconstitutional A.R.S. § 32–2072(D). The majority holds that A.R.S. § 32–2071(1)(c) survives the severance of A.R.S. § 32–2072(D). In my opinion, this amputation results in the death of the entire statute.

The general rule adopted in Arizona is expressed in *Selective Life Ins. Co. v. Equitable Life Assurance Soc.*, 101 Ariz. 594, 422 P.2d 710 (1967):

".  .  . [W]here the valid parts of a statute are effective and enforceable standing alone and independent of those portions declared unconstitutional, the court will not disturb the valid law if the valid and invalid portions are not so intimately connected as to raise the presumption the legislature would not have enacted one without the other, and the invalid portion was not the inducement of the act." *Id.*, at 599, 422 P.2d at 715.

Stated conversely, where one part of a statute is held to be of no effect because of unconstitutionality, the whole statute will be ineffectual if the remaining sections would make little sense in expressing the intent of the legislature. *Barrows v. Garvey*, 67 Ariz. 202, 193 P.2d 913 (1948).

As previously stated, the legislature intended article 2, ch. 19.1, title 32, entitled "Certification" to provide two avenues for certification as a psychologist in Arizona—

one based upon academic achievement of a PHD in Psychology under A.R.S. § 32–2071(1)(c) and the other based upon an "equivalency" plus practical experience, under A.R.S. § 32–2072(D). There is nothing in the legislative history of this act which would indicate that the legislature would have enacted one without the other and therefore, I would find under the Arizona test that the entire certification scheme must fail.

Moreover, there are serious constitutional questions raised as to whether a statute which bases certification of psychologists upon academic qualifications alone, at least as to psychologists engaged in the practice of psychology at the time of the enactment of the certification requirements, is valid. As was stated in *Taylor v. Hayes*, 131 Ill. App.2d 305, 264 N.E.2d 814 (1970):

"In the instant case the right of the plaintiff to pursue his profession was fixed during the preregulatory period and any subsequent legislation affecting his profession must be reasonable as it affects his special situation. We find that the requirement that plaintiff, as a practicing psychologist at the time of the enactment of the Act, possess a master's or doctoral degree to qualify for registration is unreasonable and arbitrary and denies him due process of law since it effectively excludes him from continuing to practice without providing an alternative method for evaluating his ability." *Id.* 264 N.E.2d at 818.

*See also, Berger v. Board of Psychologist Examiners*, 172 U.S.App.D.C. 396, 521 F.2d 1056 (1975) and *Whittle v. State Board of Examiners of Psychologists*, 483 P.2d 328 (Okl.1971).

I therefore must conclude that the legislature would not have enacted this legislation without A.R.S. § 32–2072(D) for to do so might result in unconstitutionally depriving practicing psychologists of due process. Having reached this conclusion, the entire act must be declared invalid.

I would therefore reverse the decision of the trial court insofar as it implicitly upholds the constitutionality of art. 2, ch. 19.1,

title 32 Arizona Revised Statutes. However, since the only relief requested by appellant in the superior court was that he receive certification as a psychologist, which certification I would hold cannot be constitutionally granted under the present statute, I would affirm the dismissal of appellant's special action proceedings.

## SUPPLEMENTAL OPINION

FROEB, Chief Judge, Division 1.

The appellee State of Arizona Board of Psychologist Examiners filed a motion for rehearing directed to our opinion dated December 6, 1977, to which appellant Leonard M. Cohen has filed objections.

Appellee does not raise any issue regarding our analysis of the constitutional or legal questions which would warrant granting a rehearing.

Appellee does, however, present to the court a serious issue relating to the authenticity of course credits which the Board of Psychologist Examiners found had been earned by appellant at the University of Pittsburgh. The matter comes to light in view of our order directing the superior court to enter a new judgment that appellant has complied with A.R.S. § 32–2071(1)(c).

Appellee now contends for the first time in this case that 33 course credits in psychology from the University of Pittsburgh which were found by the Board to belong to appellant were in reality credits earned by another person having the name of Leonard M. Cohen. Appellee points out that the Board received and considered the transcript of these credits without realizing the mistake. Appellant responds by conceding the error, but argues that it does not make any difference because appellant still has enough credits to qualify for certification under the formula we announced in our opinion.

In reviewing the present record once again, we find that the issue of the wrong transcript has been present in the case although never adjudicated by either the Board or the superior court. It also appears that appellant raised the question in his opening brief on this appeal, but in a context which made our consideration of the issue unnecessary in view of the finding of the Board that appellant was entitled to the credits referred to. Now it is the appellee which directs our attention to the wrong transcript and asks us to modify our opinion so that a de novo hearing may be held on the question.

If the 33 credits referred to are not properly attributable to appellant, his right to certification is clearly in question.

For that reason, we modify our previous opinion by vacating that portion which directs the trial court to enter judgment that appellant has complied with A.R.S. § 32–2071(1)(c). Instead, we reverse the judgment of the superior court and direct that the case be remanded to the Board of Psychologist Examiners for a new hearing on the question of whether appellant qualifies for certification as a psychologist under A.R.S. § 32–2071(1)(c). The findings of the Board previously made are vacated and it is directed to enter new findings consistent with our earlier opinion.

IT IS ORDERED denying the motion for rehearing.

OGG, J., concurs.

JACOBSON, Judge, specially concurring:

Under the majority opinion in this case, I agree that the procedure in this supplemental opinion is proper. However, as pointed out in my previous dissent, in my opinion there is no constitutional statute in existence which would authorize certification of psychologists.