[No. 6864-1-III.  Division Three.  December 2, 1986.]

FREDERICK V. MORSE, *as Guardian ad Litem,* ET AL, *Appellants,* v. THE CITY OF TOPPENISH, *Appellant,* OCEAN POOL SUPPLY CO., INC., ET AL, *Respondents.*

*J. Adams Moore, Jr.,* and *Moore & Hoffman,* for appellants Morse, et al.

*Walter G. Meyer, Jr., Mark A. Marsing,* and *Halverson & Applegate,* for appellant Toppenish.

*Philip W. Wagner* and *Nashem & Wagner,* for respondent Ocean Pool Supply Co.

*Terry A. Brooks, John K. Johnsen,* and *Brooks & Larson, P.S.,* for respondent Arcadia Air Products Co.

THOMPSON, J.—This appeal challenges a summary judgment granted Ocean Pool Supply Co., Inc., and Arcadia Air Products Co. dismissing the Morses' claims and the City of Toppenish's cross claims. We reverse.

On August 5, 1982, 14–year–old Daniel Morse was

attending a swimming team function at the Toppenish Municipal Swimming Pool. That evening, he dove into the pool from a 14–foot "Duraflex" diving board attached to a 3–meter diving stand. The board was purportedly manufactured by Arcadia Air Products Co. and sold to the City of Toppenish by Ocean Pool Supply Co., Inc.

Daniel's head struck the bottom of the pool, causing severe head and brain injuries. Daniel and his parents sued the City of Toppenish, alleging negligence and improper maintenance of the pool. In an amended complaint, the Morses added Arcadia and Ocean as defendants and included product liability claims against them for failure to adequately warn of product dangers. Affidavits were submitted by plaintiffs indicating a pool equipped with a 3–meter stand and a 14–foot Duraflex diving board should have a "diving envelope" with a minimum water depth of 12 feet. Although the actual water depth is in dispute, the City pool at the time of injury was less than 12 feet deep. While Arcadia and Ocean knew or should have known of the potential danger to users of the diving board, according to affidavits considered on summary judgment, no warning was ever provided to the City regarding minimum depth.

Arcadia and Ocean moved for summary judgment, relying on RCW 4.16.300–.320, which govern claims arising from improvements to real property and bar those not accruing within 6 years after substantial completion of construction. The board was bought and installed on the 3–meter diving stand in 1969, more than 6 years prior to accrual of the Morses' cause of action.

The trial court granted Arcadia and Ocean's motion and also dismissed the City's cross claim for contribution against Arcadia and Ocean because of their nonliability to the Morses under the statute. Motions for reconsideration were denied and both the Morses and City appeal the dismissal on this limited issue.

The controlling issue is whether RCW 4.16.300–.320, and its statute of repose, will bar a product liability claim against a manufacturer and seller of a product incorporated

into an improvement to real property.

■ Both the Morses and the City contend that RCW 4.16.300–.320 should not shield manufacturers and suppliers of mere component parts of improvements to real property, citing the more recent tort and product liability reform act of 1981, RCW 7.72.010 *et seq.* We agree. In interpreting a statute, it is the court's duty to ascertain and give effect to the intent and purpose of the Legislature as expressed in the act as a whole. *Condit v. Lewis Refrigeration Co.,* 101 Wn.2d 106, 676 P.2d 466 (1984). Statutes which are in apparent conflict are to be harmonized where possible, if this can be achieved without distorting the language used. *Tommy P. v. Board of Cy. Comm'rs,* 97 Wn.2d 385, 645 P.2d 697 (1982); *Mike's Rental Mach., Inc. v. Corbett Draw Farms, Inc.,* 44 Wn. App. 257, 721 P.2d 1000 (1986). Also, the sequence of statutes on the same general subject may provide insight as to legislative policy and intent. *In re Marriage of Little,* 96 Wn.2d 183, 634 P.2d 498 (1981); 2A C. Sands, *Statutory Construction* § 56.02 (4th ed. 1984).

In *Condit v. Lewis Refrigeration Co., supra,* considering the purpose of the contractors/architects statute, the court noted the statute lists various construction activities, including designing, planning, surveying, architectural, or engineering services.

> Each of these activities relates to the process of building a structure. Thus, the statute focuses on individuals whose activities relate to construction of the improvement, rather than those who service or design items within the improvement. In interpreting similar statutes, other states restrict their application to contractors or individuals whose services contribute to the construction of the structure rather than property within it.

*Condit,* at 110.

The court held RCW 4.16.300–.320 were also so limited. It noted if such manufacturers and sellers were protected "they could easily avoid product liability law, if they desired, by simply bolting, welding the equipment or fas-

tening it in some other manner to the building". *Condit*, at 111–12.

■ Here, the "improvement" was the swimming pool itself. A cause of action concerning a product used within that improvement, the 14–foot Duraflex diving board, is covered under the more recent tort and product liability reform act of 1981, RCW 7.72.010 *et seq.*[1] Sellers and manufacturers of improvements upon real property are also included within the ambit of the statute, as noted in Washington State Senate Select Comm. on Tort & Prod. Liab. Reform, *Final Report 1981,* at 31. *See* RCW 7.72-.010(1) and (2) (defining "product seller" and "manufacturer"). The reasoning in *Condit* would also result in the same conclusion.

The tort and products liability reform act of 1981 contains its own statute of repose which seeks to protect manufacturers and sellers from "long–tail" claims in much the same way that RCW 4.16.310 does with its 6–year statute of repose for claims arising from construction, design, or engineering of improvements to real property. A statute which terminates any right of action after a specified time has elapsed, regardless of whether there has as yet been an injury, is called a "statute of repose". In contrast, a "statute of limitation" does not begin to run until "injury" occurs, which may involve "discovery of harm" provisos. *See generally* 15 L. Orland & K. Tegland, Wash. Prac., *Trial Practice* §§ 411–433 (4th ed. 1986); Comment, *Washington's Useful Safe Life: Snipping Off the Long Tail of Product Liability?,* 57 Wash. L. Rev. 503 (1982).

The Legislature's intent in including a statute of repose in RCW 7.72.060 was to provide some certainty in the area of manufacturers' and sellers' long–term exposure for

---

[1]The act defines product as:

"(3) Product. 'Product' means *any object possessing intrinsic value,* capable of delivery either as an assembled whole or as a component part or parts, and produced for introduction into trade or commerce. Human tissue and organs, including human blood and its components, are excluded from this term." (Italics ours.) RCW 7.72.010(3).

product–related claims while, at the same time, preserving claims based upon product use which is reasonable in light of the product's unique characteristics. *See Final Report,* at 19. The comprehensive nature of the 1981 act and its adoption of a useful safe life concept evidences an intent to occupy the field of time limits on product–related claims. Even if RCW 4.16.300–.320 might have applied to certain product–related claims prior to the effective date of RCW 7.72, it is clear the Legislature has altered that application. The Morses' claims arose after the effective date of the act. Thus, the useful safe life statute of repose provisions of RCW 7.72.060 are applicable here, as are the statute of limitation provisions included therein.

(1) Useful safe life. (a) Except as provided in subsection (1) (b) hereof, a product seller shall not be subject to liability to a claimant for harm under this chapter if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired.

"Useful safe life" begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner. . . .

. . .

(2) Presumption regarding useful safe life. *If the harm was caused more than twelve years after the time of delivery, a presumption arises that the harm was caused after the useful safe life had expired.* This presumption may only be rebutted by a preponderance of the evidence.

(3) Statute of limitation. Subject to the applicable provisions of chapter 4.16 RCW pertaining to the tolling and extension of any statute of limitation, no claim under this chapter may be brought more than three years from the time the claimant discovered or in the exercise of due diligence should have discovered the harm and its cause.

(Italics ours.)

In ruling on a motion for summary judgment, a court must consider the material evidence and all reasonable inferences therefrom in favor of the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 656 P.2d 1030 (1982);

*Wood v. Gibbons,* 38 Wn. App. 343, 685 P.2d 619 (1984). The motion may be granted only if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Wood v. Gibbons, supra.* The appellate court performs the same task utilizing the same evidence as the trial court had before it. *Wilson v. Steinbach, supra.* However, on review we must apply the correct statute, RCW 7.72.

Here, the Morses provided the affidavit of an expert, Dr. Milton A. Orphan, who indicated the useful safe life of a 14–foot Duraflex diving board was in excess of 15 to 16 years of constant use. Daniel Morse's injury occurred less than 14 years after delivery of the diving board. His claim was brought within 3 years from discovery of the harm. The affidavit also indicated the diving board was not in constant use, since it was stored during the winter. The Orphan affidavit created a question of fact. Thus, summary judgment based on RCW 4.16.310 must be reversed and the case remanded for trial. The plaintiff will still have the burden of overcoming the useful safe life presumption by a preponderance of the evidence.

The City's argument regarding dismissal of its cross claim for contribution need not be addressed since the trial court linked denial of the Morses' claim to dismissal of the City's cross claim for contribution. Because we reverse and remand for trial on the merits, the City's claim is preserved.

Reversed and remanded.

McINTURFF, A.C.J., and MUNSON, J., concur.

Reconsideration denied January 20, 1987.

Review denied by Supreme Court March 31, 1987.