791 P.2d 1285

**David OLSEN, Plaintiff–Appellant, Cross–Respondent,**

v.

**J.A. FREEMAN COMPANY, Corporate Does I–V, and Individual Does I–V, Defendants–Respondents, Cross–Appellants.**

No. 17471.

Supreme Court of Idaho.

May 7, 1990.

E. Lee Schlender, Chartered, Hailey, for plaintiff-appellant, cross-respondent.

Benoit, Alexander, Sinclair, Harwood & High, Twin Falls, for defendants-respondents, cross-appellants. John A. Doerr, argued.

BOYLE, Justice.

David Olsen (hereafter "Olsen") appeals from the district court's order granting summary judgment in favor of the defendants. Summary judgment was granted on the basis that Olsen's cause of action was foreclosed by the Idaho products liability statute of repose, I.C. § [6–1403], 6–1303,[1] which creates a rebuttable presumption that a product's "useful safe life" has expired in those claims that involve harm or injury occurring more than ten years after time of delivery. Under the statute, failure to rebut the presumption with clear and convincing evidence bars a claim.

Olsen was injured on June 30, 1986, while operating a hay baler owned by his employer, Loren Strode. According to Olsen's account of the incident, the baler's pickup roller became jammed and required repair. While attempting those repairs an unseen object, thought to be the spring-loaded tine on the baler's pickup roller, struck Olsen in the face causing retinal hemorrhaging and blindness in one eye.

Olsen brought suit against the baler's manufacturer, J.A. Freeman Co., and Loren Strode. The complaint against Freeman alleged failure to warn, failure to properly instruct, and defective and dangerous design. The complaint against Strode alleged negligent entrustment, intentional endangerment, negligent supervision and failure to properly warn and instruct. Defendants' answers denied liability and alleged misuse and misconduct on the part of Olsen, and Freeman asserted that Olsen's claim was barred by the provisions of the

1. The bracketed section designation was inserted by the compiler, but will be deleted from the balance of the Court's discussion for convenience purposes. As stated in the compiler's notes the bracketed section designations were inserted to indicate the necessary changes in numbering from the law as enacted.

Idaho products liability statute of repose. I.C. § 6–1403(1)(a).

Defendant Freeman filed a motion for summary judgment offering affidavit and deposition evidence that the hay baler was manufactured by J.A. Freeman Co., sold to a Twin Falls dealer and delivered to the first purchaser in 1968. Olsen's injury occurred on June 30, 1986, approximately eighteen years after the hay baler was delivered to its first purchaser and placed into service. Based upon the evidence submitted by defendant, a rebuttable presumption arose based on I.C. § 6–1403 that the hay baler's useful safe life had expired prior to the time of Olsen's injury. This statutory presumption was unrebutted by Olsen. Accordingly, the district court granted defendants' motion for summary judgment on the basis of the statute of repose in I.C. § 6–1403.

On appeal, Olsen contends that 1) the Idaho product liability statute of repose denies plaintiff equal protection and due process; 2) the statute of repose is unconstitutional in that it violates the "open court" provision of art. 1, § 18 of the Idaho Constitution; and 3) material issues of fact exist precluding granting of summary judgment in favor of defendants.

I.

*Standard For Attacking Constitutionality of Statute*

We first turn to the claim that I.C. § 6–1403 denies Olsen equal protection of the law. Olsen cites art. 1 § 2 of the Idaho Constitution and the fourteenth amendment to the United States Constitution and asserts that the statutory classification of all product liability plaintiffs with causes of action involving products in the stream of commerce more than ten years offends his constitutional guarantee to equal protection.

■ The party asserting the unconstitutionality of a statute bears the burden of showing its invalidity and must overcome a strong presumption of validity. *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983); *Cummings v. J.R. Simplot Co.,* 95 Idaho 465, 511 P.2d 282 (1973); *Idaho Tel. Co. v. Baird,* 91 Idaho 425, 423 P.2d 337 (1967), *ovrl'd on other grounds* by *Simmons v. Idaho State Tax Comm'n,* 111 Idaho 343, 723 P.2d 887 (1986). It is generally presumed that legislative acts are constitutional, that the state legislature has acted within its constitutional powers, and any doubt concerning interpretation of a statute is to be resolved in favor of that which will render the statute constitutional. *State v. Rawson,* 100 Idaho 308, 597 P.2d 31 (1979); *see also Bingham Memorial Hosp. v. Idaho Dep't of Health & Welfare,* 112 Idaho 1094, 739 P.2d 393 (1987); *Moon v. State Bd. of Land Commrs.,* 111 Idaho 389, 724 P.2d 125 (1986); *Idaho State AFL–CIO v. Leroy,* 110 Idaho 691, 718 P.2d 1129 (1986); *Hecla Mining Co. v. Idaho State Tax Comm.,* 108 Idaho 147, 697 P.2d 1161 (1985); *State v. Newman,* 108 Idaho 5, 696 P.2d 856 (1985); *State ex rel. Kidwell v. United States Mktg., Inc.,* 102 Idaho 451, 631 P.2d 622 (1981); 25 A.L. R.4th 381 (1981); *School Dist. No. 25 v. State Tax Comm.,* 101 Idaho 283, 612 P.2d 126 (1980); *Lindstrom v. District Bd. of Health, Panhandle Dist. No. 1,* 109 Idaho 956, 712 P.2d 657 (Ct.App.1985); *Flores v. State,* 109 Idaho 182, 706 P.2d 71 (Ct.App. 1985); *State v. Reed,* 107 Idaho 162, 686 P.2d 842 (Ct.App.1984).

Those challenging the legislative judgment and attacking the constitutionality of a statute must convince the courts that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981), *reh. den.* (1981).

■ At issue is the constitutionality of the Idaho products liability statute of repose. We are required to pass upon and determine all questions of law presented

upon appeal and necessary to the final determination of the case. I.C. § 1–205. It is well established that when a case can be decided upon a ground other than a constitutional ground, the Court will not address the constitutional issue unless it is necessary for a determination of the case. *Poesy v. Bunney*, 98 Idaho 258, 561 P.2d 400 (1977); *Swensen v. Buildings, Inc.*, 93 Idaho 466, 463 P.2d 932 (1970). This case should not be resolved solely on the summary judgment issues because we are squarely presented with the constitutional issue which must be resolved for a proper and full determination of the issues presented.

■■■ This Court has recognized three standards of review to be employed in an equal protection analysis. *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977); *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983). Where the classification is based on a suspect classification or involves a fundamental right we have employed the "strict scrutiny" test. Where "the discriminatory character of a challenged statutory classification is apparent on its face and where there is also a patent indication of a lack of relationship between the classification and the declared purpose of the statute," the "means-focus" test is applicable. In other cases the "rational basis" test is employed. *Johnson v. Sunshine Mining Co.*, 106 Idaho 866, 870, 684 P.2d 268, 271 (1984).

The three standards of equal protection analysis recognized in Idaho, strict scrutiny, means-focus, and rational basis have

been the subject of extensive analysis by this Court and the Idaho Court of Appeals in both criminal and civil cases. In criminal law the three standards have been analyzed and applied to a wide variety of cases ranging from a municipal control over establishments that sell alcoholic beverages and allow dancing, *State v. Bowman*, 104 Idaho 39, 655 P.2d 933 (1982), regulations controlling the enactment of drug paraphernalia legislation, *State v. Newman*, 108 Idaho 5, 696 P.2d 856 (1985), and to murder and capital cases, *State v. Fetterly*, 115 Idaho 231, 766 P.2d 701 (1988); *State v. Beam*, 115 Idaho 208, 766 P.2d 678 (1988).

In civil cases the three standards have been adopted and applied to a variety of cases ranging from recreational use of land, *Johnson v. Sunshine Mining Co.*, 106 Idaho 866, 684 P.2d 268 (1984), residency requirements for appointment to a local planning and zoning board, *Langmeyer v. State*, 104 Idaho 53, 656 P.2d 114 (1982), a commission's rate-setting powers, *General Tel. Co. v. I.P.U.C.*, 109 Idaho 942, 712 P.2d 643 (1986), and to the constitutionality of a limitation on damage recovery under the Idaho Tort Claims Act. *Packard v. Joint School Dist. No. 171*, 104 Idaho 604, 661 P.2d 770 (Ct.App.1983).[2]

■■■ It is well established that the three standards of equal protection analysis, *i.e.*, strict scrutiny, means-focus, and rational basis, have been adopted, applied and repeatedly affirmed by the appellate courts of this state. It is likewise well settled that the "rational basis" test, or the "restrained-view" standard as it is often described, is applicable where classification statutes deal with economic matters or

---

**2.** In *Packard v. Joint School Dist.* the Court of Appeals carefully, and in a scholarly fashion, reviewed the history of the three standards of review. The Court of Appeals in *Packard* cited *Stucki v. Loveland*, 94 Idaho 621, 495 P.2d 571 (1972); *State v. Cantrell*, 94 Idaho 653, 496 P.2d 276 (1972), and *Thompson v. Hagan*, 96 Idaho 19, 523 P.2d 1365 (1974), in reviewing the development of the three tests, primarily the "rational basis" test. *See Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223

(1977), and *Leliefeld v. Johnson*, 104 Idaho 357, 659 P.2d 111 (1983). Judge Burnett, in writing for the Court of Appeals, traced the origin and refinement of the three standards, and reference is directed to *Packard v. Joint School Dist.*, 104 Idaho at 607, 661 P.2d at 773, for that historical perspective. The language of *Packard* dealing with the placement of "fair and substantial" into one of the three standards was clarified and explained in *Johnson v. Sunshine Mining Co.*, 106 Idaho 866, 684 P.2d 268 (1984), see fn. 5, at p. 870, 684 P.2d 268.

matters of social welfare such as the Idaho products liability statute of repose in the present appeal. *See, e.g., State v. Bowman,* 104 Idaho 39, 655 P.2d 933 (1982); *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983); *Jones v. State Bd. of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).[3] Under the "rational basis" test, equal protection is offended only if classifications are based solely on reasons totally unrelated to the pursuit of state's goals and only if no grounds can be advanced to justify those goals. *City of Lewiston v. Knieriem,* 107 Idaho 80, 685 P.2d 821 (1984). In *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983), this Court held that the appropriate test to review a statute which impacts social or economic areas is the rational basis test which requires only that the statute "advances legitimate legislative goals in a rational fashion." 104 Idaho at 374, 659 P.2d at 128.[4] Furthermore, such classifications under the rational basis test do not violate the equal protection clause because they result in some inequality. Mathematical precision is not required in scrutinizing the constitutionality of the statute. *Langmeyer v. State,* 104 Idaho 53, 656 P.2d 114 (1982).

> *The constitutional safeguard [of equal protection] is offended only if the classification rests on ground wholly irrelevant to the achievement of the state's objective. State legislatures are presumed* to have acted *within their constitutional power* despite the fact that, in practice, their law results in some in-

equality. *A statutory discrimination will not be set aside if any statement of facts may be reasonably conceived to justify it.* (Emphasis added.)

*Jones v. State Bd. of Medicine,* 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied,* 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977), *quoting McGowan v. Maryland,* 366 U.S. 420, 425–56, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393.

I.C. § 6–1303 impacts social and economic areas and must be evaluated under the rational basis test which provides that equal protection is denied and offended only if the classification is based solely on reasons totally unrelated to the pursuit of the state's goals and only if no grounds can be advanced to justify those goals. For reasons stated in Part II we find the statute constitutional under the rational basis test as having a reasonably conceived objective and advancing legitimate legislative goals in a rational fashion.

## II.

### *Idaho Statute of Repose*

■ The typical "statute of repose" enacted in many jurisdictions provides an *absolute* time limit on claims and causes of action. Idaho's statute differs from the typical statute of repose in that it does not act to absolutely bar an action, but rather establishes a separate affirmative defense which can be rebutted. Idaho's statute contains a "useful safe life" provision that focuses upon the age of a product, beginning at the time of delivery to the first

---

**3.** *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983), and *Packard v. Joint School Dist.,* 104 Idaho 604, 661 P.2d 770 (Ct.App.1983), have been widely cited as among those cases upholding a limit on damages recoverable against government tortfeasors. *See* Government Tort Damages Statutes, 43 A.L.R.4th 19 § 3[a], p. 29.

**4.** In *Leliefeld* this Court observed:
When the constitutionality of a statute is challenged on grounds that it denies equal protection, the first question to address is what standard of review is to be applied. Three standards of equal protection analysis have been recognized in Idaho: strict scrutiny,

means-focus, and rational basis. (Citations omitted.)
104 Idaho at 373, 659 P.2d at 127.
A scholarly analysis of the various standards is contained in *Leliefeld,* 104 Idaho at 373–75, 659 P.2d at 127–29, and is applicable to the issues presented here. Rather than restate herein the standards and the analysis reference is directed to *Leliefeld. See also Schweiker v. Wilson,* 450 U.S. 221, 101 S.Ct. 1074, 67 L.Ed.2d 186 (1981); *Idaho Dep't of Employment v. Smith,* 434 U.S. 100, 98 S.Ct. 327, 54 L.Ed.2d 324 (1977).

712

purchaser or lessee, and a "statute of repose" that presumes the useful safe life of a product to have expired ten years after delivery of the product.

The full text of the section of the statute in question provides as follows:

**Length of time product sellers are subject to liability.**—(1) Useful safe life.

(a) Except as provided in subsection (1)(b) hereof, *a product seller shall not be subject to liability to a claimant for harm under this chapter if the product seller proves by a preponderance of the evidence that the harm was caused after the product's "useful safe life" had expired.*

*"Useful safe life" begins at the time of delivery of the product and extends for the time during which the product would normally be likely to perform or be stored in a safe manner.* For the purposes of this chapter, *"time of delivery" means the time of delivery of a product to its first purchaser* or lessee who was not engaged in the business of either selling such products or using them as component parts of another product to be sold.

(b) A product seller may be subject to liability for harm caused by a product used beyond its useful safe life to the extent that the product seller has expressly warranted the product for a longer period.

(2) Statute of repose.

(a) Generally. *In claims that involve harm caused more than ten (10) years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. This presumption may only be rebutted by clear and convincing evidence.*

(b) Limitations on statute of repose.

1. If a product seller expressly warrants that its product can be utilized safely for a period longer than ten (10) years, the period of repose, after which the presumption created in subsection (2)(a) hereof arises, shall be extended according to that warranty or promise.

2. The ten (10) year period of repose established in subsection (2)(a) hereof does not apply if the product seller intentionally misrepresents facts about its product, or fraudulently conceals information about it, and that conduct was a substantial cause of the claimant's harm.

3. Nothing contained in subsection (2) of this section shall affect the right of any person found liable under this chapter to seek and obtain contribution or indemnity from any other person who is responsible for harm under this chapter.

4. The ten (10) year period of repose established in subsection (2)(a) hereof shall not apply if the harm was caused by prolonged exposure to a defective product, or if the injury-causing aspect of the product that existed at the time of delivery was not discoverable by an ordinary reasonably prudent person until more than ten (10) years after the time of delivery, or if the harm, caused within ten (10) years after the time of delivery, did not manifest itself until after that time.

(3) Statute of limitation. No claim under this chapter may be brought more than two (2) years from the time the cause of action accrued as defined in section 5–219, Idaho Code. (Emphasis added.)

The legislative purpose of Idaho's statute of repose was expressly stated in the 1980 Session Laws, ch. 225, p. 499, "to provide for the maximum length of time products sellers are subject to liability." [5]

The Idaho statute has its origin in the Model Uniform Product Liability Act. Fed.

---

**5.** One commentator on the subject identified the practical problems inherent in defending a product liability claim after the passage of a significant period of time.

The abnormally long period of time between the product liability lawsuit created unique conceptual and practical problems, particularly for the defense. These problems include the admissibility of evidence, the concept of defect, the proof of defect, the availability of defenses, the proof of defenses, and damages. In addition, a jury's natural tendency to em-

Reg., Vol. 44, No. 211. The model Act was drafted in 1979 by the United States Department of Commerce, and Idaho is one of only three states to have adopted it. The Idaho statute is virtually identical to the model Act except it deleted examples of evidence of "useful safe life." [6] Although the examples were deleted, the Idaho statute defines "useful safe life" as extending "... for the time during which the product would normally be likely to perform ... in a safe manner." I.C. § 6–1403(1)(a).

The only other two states which have adopted any version of the model Act are Washington and Kansas. The statutes of all three states, including Idaho, are essentially identical to each other and to the model Act. Washington has a twelve-year presumptive period of repose, and the presumption may be overcome by a preponderance of the evidence as compared to Idaho's clear and convincing standard. The Kansas statute is identical to the model Act.

The Washington statute was interpreted in *Morse v. City of Toppenish*, 46 Wash. App. 60, 729 P.2d 638 (1986), *rev. den.* (1987). In *Morse*, the plaintiff brought an action against a manufacturer of a diving board for injuries sustained while diving into a pool. The diving board had been purchased and installed in 1969, thirteen years before the accident in 1982. The trial court granted summary judgment for the manufacturer applying the useful safe life portion of the Washington statute. In reversing, the Washington Court of Appeals stated:

> Here, the Morses provided the affidavit of an expert, Dr. Milton A. Orphan, who indicated the useful safe life of a fourteen-Duraflex diving board was in excess of fifteen to sixteen years of constant use. Daniel Morse's injury occurred less than fourteen years after delivery of the diving board. His claim was brought within three years from discovery of the harm. The affidavit also indicated the diving board was not in constant use, since it was stored during the winter. The Orphan affidavit created a question of fact. Thus, summary judgment based on RCW 4.16.310 must be reversed and the case remanded for trial. The plaintiff will still have the burden of overcoming the useful safe life presumption by a preponderance of the evidence.

---

ploy hindsight makes it virtually impossible to ensure that a 1950 product is judged by 1950 standards. Evidence gathered after the sale of a product, even if admitted with a limiting charge, forces a jury to make judgment based upon retroactive and unrealistic standards. Further, a manufacturer might refrain from making a product safer and more efficient out of fear that any design changes might be used against him at trial. Although a product may have been used safely over a ten-or-twenty-year period, the defendant still faces enormous problems in proving the defenses of alteration, modification, or misuse.

McGovern, *The Variety, Policy and Constitutionality of Product Liability Statutes of Repose*, 30 Am.U.L.Rev. 579, 615 (1981).

The number of cases involving products over ten years old is relatively small, but proponents of statutes of repose contend that their effect upon business planning is significant and out of proportion with the number of cases that have arisen. *See* Uniform Product Liability Act, 44 Fed.Reg. 62,714, 62,733–34 (1979), citing Closed Claim Survey: A Technical Analysis of Survey Results (1977).

Such statutes, having the effect of denying any judicial remedy for the enforcement of an otherwise valid claim, are justified on grounds of policy and as statutes of repose "designed to protect the citizens from stale and vexatious claims and to make an end to the possibility of litigation after the lapse of a reasonable time."

*Hargraves v. Brackett Stripping Mach. Co.*, 317 F.Supp. 676, 682 (E.D.Tenn.1970).

6. Examples of evidence that is especially probative in determining whether a product's useful safe life had expired include:

(a) The amount of wear and tear to which the product had been subject;

(b) The effect of deterioration from natural causes, and from climate and other conditions under which the product was used and stored;

(c) The normal practices of the user, similar users, and the product seller with respect to the circumstances, frequency, and purposes of the product's use, and with respect to repairs, renewals, and replacements;

(d) Any representations, instructions or warnings made by the product seller concerning proper maintenance, storage, and use of the product or the expected useful safe life of the product; and

(e) Any modification or alteration of the product by a user or third party.

729 P.2d at 641–42. There is no further discussion in *Morse v. City of Toppenish* defining the term "useful safe life" and although the affidavit of plaintiff's expert expressed an opinion as to the useful safe life of the diving board, the Washington Court of Appeals did not address that issue.

There are two cases citing the Kansas statute. In *Chamberlain v. Schmutz Mfg. Co.*, 532 F.Supp. 588 (D.Kan.1982), the United States District Court denied defendant's motion to amend his answer to add the defense that the Kansas statute limited liability to the useful safe life of the product. The district court denied the motion to amend on the basis that the useful safe life limitation contained in the Kansas statute would not be applied retroactively. In *Tomlinson v. Celotex Corp.*, 244 Kan. 474, 770 P.2d 825 (1989), the Kansas Supreme Court was faced with the question of the limitation of actions relating to asbestos produced and sold by the defendant. One of the issues presented was whether the useful safe life had any application to the claims. The Kansas Supreme Court held that useful safe life did not apply because the statute of repose did not amend other Kansas limitation statutes which specifically applied to asbestos claims.

The provisions of I.C. § 6–1403 constitute a statute of repose limiting recovery for which there would otherwise be liability under the product liability statutes. I.C. § 6–1403 is not a statute of limitations, although subsection (3) of the statute does provide a two-year statute of limitations barring any claim which is filed more than two years from the time the cause of action accrued. The statute of limitation portion of I.C. § 6–1403 is not involved in this action.

The ten-year period in I.C. § 6–1403 creates a presumption in favor of a manufacturer and shifts the burden of proof to the plaintiff to rebut the presumption. Rule 301 of the Idaho Rules of Evidence provides that statutes may shift the burden of going forward and producing some evidence. Accordingly, there is no defect in the statute as a result of placing the burden on the plaintiff to rebut the presumption. The validity of the statute in question depends upon the statute of repose concept that recovery under the product liability statute is precluded if the harm occurs after the product's "useful safe life" has expired. The issue presented is whether the trial court erred in granting summary judgment on the question of whether the useful safe life of the baler had expired prior to Olsen's injury.

■ The record before the trial court clearly established that the hay baler had been owned by several different individuals, was worn out and had been rebuilt at least twice with parts borrowed from other machinery. Olsen did not establish how his injury occurred and offered absolutely no evidence in the form of affidavit or otherwise to oppose the motion for summary judgment. Prominently absent before the district court was any evidence submitted to rebut the statutory presumption contained in I.C. § 6–1403. Although an expert was hired by Olsen and his deposition is in the record, a careful review of the deposition reveals that the expert had never seen the hay baler in question or one similar to it manufactured by Freeman. Although Olsen's expert witness testified in his deposition that the hay baler did not comply with ANSI standards, that it had a design defect and failed to warn, the record is completely devoid of any evidence to rebut the statutory presumption that the product's useful safe life had expired.

Idaho's statute of repose advances a policy of finality in legal relationships and thus furthers the objective of the legislature by providing for "the maximum length of time products sellers are subject to liability." The classification established by I.C. § 6–1403 bears a rational relation to the legislative objective. The statute of repose falls within the "rational basis" test which is generally appropriate to use when reviewing statutes which impact social or economic areas and the classification advances

legitimate goals in a rational fashion. *Leliefeld v. Johnson,* 104 Idaho 357, 659 P.2d 111 (1983).

It is logical to infer from the expressed legislative intent of finalizing legal relationships and establishing the maximum length of time manufacturers are subject to liability, that the statute has a reasonably conceived objective, has a rational basis and must be sustained under the equal protection clauses.

### III.

*"Useful Safe Life" is Not Unconstitutionally Vague*

Olsen contends that the Idaho product liability statute of repose is so vague as to deny him due process of law. We disagree.

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property, without due process of law....

U.S. CONST. amend. 14, § 1.

Similarly, the Idaho Constitution states:

> No person shall be ... deprived of life, liberty or property without due process of law.

ID. CONST. art. 1, § 13.

Statutes that are found to be vague, indefinite or uncertain are in violation of these constitutional provisions and as such are unconstitutional. *Florida Businessmen for Free Enter. v. State,* 499 F.Supp. 346 (Fla.1980).

> It is a general principle of statutory law that a statute must be definite to be valid. It has been recognized that a statute is so vague as to violate the due process clause of the United States Constitution where its language does not convey sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practices,

or stated otherwise, where its language is such that men of common intelligence must necessarily guess at its meaning.

16A Am.Jur.2d, *Constitutional Law* § 818, p. 988.

The "void for vagueness" doctrine incorporates the due process notions of fair notice or warning,[7] and mandates that lawmakers set reasonably clear guidelines for triers of fact in order to prevent "arbitrary and discriminatory enforcement." *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *see also Casbah, Inc. v. Thone,* 512 F.Supp. 474 (1980), *aff'd in part, rev'd in part,* 651 F.2d 551 (8th Cir. 1981), *cert. den.* 455 U.S. 1005, 102 S.Ct. 1642, 71 L.Ed.2d 874 (D.C.Neb.1982).

In evaluating a constitutional challenge to a statute on the basis of void for vagueness, the Court must consider both the essential fairness of the law and the impracticability of drafting legislation with greater specificity. *Arnett v. Kennedy,* 416 U.S. 134, 161, 94 S.Ct. 1633, 1647, 40 L.Ed.2d 15 (1974); *Fabio v. Civil Serv. Comm'n,* 489 Pa. 309, 414 A.2d 82, 85 (1980).

> It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case.... Certainly one of the basic purposes of the Due Process Clause has always been to protect a person against having the Government impose burdens upon him except in accordance with the valid laws of the land. Implicit in this constitutional safeguard is the premise that the law must be one that carries an understandable meaning with legal standards that courts must enforce.

*Giaccio v. Pennsylvania,* 382 U.S. 399, 402–03, 86 S.Ct. 518, 520–21, 15 L.Ed.2d 447 (1966).

---

7. *Grayned v. Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33 L.Ed.2d 222 (1972); *Papachristou v. Jacksonville,* 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110 (1972).

This Court has examined criminal statutes under this test. In *State v. Marek*, 112 Idaho 860, 736 P.2d 1314 (1987), we stated:

> This Court has held that a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law.

112 Idaho at 866, 736 P.2d at 1320. See also *State v. Lenz*, 103 Idaho 632, 651 P.2d 566 (Ct.App.1982); *State v. Carringer*, 95 Idaho 929, 523 P.2d 532 (1974); *State v. Groseclose*, 67 Idaho 71, 171 P.2d 863 (1946). Although most decisions invoking the constitutional "void for vagueness" doctrine have dealt with criminal statutes and ordinances, this doctrine applies equally to civil statutes. *Jones v. City of Lubbock*, 727 F.2d 364 (5th Cir.1984), *reh. den.*, 730 F.2d 233 (C.A.Tex.1984); *In Interest of D.L.H.*, 198 Neb. 444, 253 N.W.2d 283 (1977).

The U.S. Supreme Court in *Giaccio* reviewed the constitutionality of a state statute requiring the payment of costs and rejected the argument that the statute was not unconstitutionally vague solely because it was of a "civil character".

> Both liberty and property are specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process, and this protection is not to be avoided by the simple label a State chooses to fasten upon its conduct or its statute. So here this state Act whether labeled "penal" or not must meet the challenge that it is unconstitutionally vague.

382 U.S. at 402, 86 S.Ct. at 520.

■ However, greater tolerance is permitted when addressing a civil or non-criminal statute as opposed to a criminal statute under the void for vagueness doctrine. *Chalmers v. City of Los Angeles*, 762 F.2d 753 (9th Cir.1985). A civil or non-criminal statute is not unconstitutionally vague if persons of reasonable intelligence can derive core meaning from it. *Cotton States Mut. Ins. Co. v. Anderson*, 749 F.2d 663 (11th Cir.1984).

■ As stated previously, the Idaho statute derives its origin from the Model Uniform Product Liability Act. Fed.Reg., Vol. 44, No. 211. The Idaho legislature adopted the suggested "useful safe life" provision that focuses upon the age of a product, beginning at the time of delivery to the first purchaser or lessee, and the "statute of repose" provision that presumed the "useful safe life" of a product to expire ten years after delivery of the product. The model act, unlike the Idaho statute, sets forth a series of examples to assist in determining whether the "useful safe life" has expired.[8] The drafters of the model act acknowledged that a basic problem with the model act has been vagueness as to the concept of useful safe life. However, a statute denies due process of law and raises a constitutional question only when it is so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. *State v. Cantrell*, 234 Kan. 426, 673 P.2d 1147 (1983), *cert. den.*, 469 U.S. 817, 105 S.Ct. 84, 83 L.Ed.2d 31 (Kan.1984); *State v. O'Neill Investigations, Inc.*, 609 P.2d 520 (Alaska 1980); *Fabio v. Civil Serv. Comm'n*, 489 Pa. 309, 414 A.2d 82 (1980); *Cohen v. State*, 121 Ariz. 20, 588 P.2d 313 (App.1977).

■ The validity of the Idaho products liability statute of repose depends upon the concept that recovery is precluded if the harm occurs after the product's "useful safe life." Although the Idaho statute provides no specific criteria, example or guidelines to determine the "useful safe life" of a product, absence of definitions does not necessarily render a statute void for vague-

---

**8.** See fn. 7. As noted, the Idaho statute defines *"useful safe life"* as extending "... for the time during which the product would normally be *likely to perform* or be stored *in a safe manner."* I.C. § 6–1403(1)(a). (Emphasis added.)

ness when such terms can be interpreted as taking their ordinary, contemporary or common meaning. *See Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). The relevant factors to consider in a products liability action include evidence to establish whether the "useful safe life" of a product has expired. *Cf. Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976). As we held in *Farmer*, of additional relevance is the age of a product, the length and severity of its use, the state of its repair and its expected useful life. 97 Idaho at 748, 553 P.2d at 1312. The legislature's enactment of the Idaho Products Liability Act to include a statute of repose and consideration of the useful safe life of a product in that context is not inconsistent with the prior holdings of this Court. *Farmer v. International Harvester Co.*, 97 Idaho 742, 553 P.2d 1306 (1976). We hold that the statute is not so vague as to deny due process.

## IV.

### *Open Court Provision of Idaho Constitution*

Olsen contends that Idaho's statute of repose, notwithstanding its rebuttable presumption provision, effectively blocks free access to the courts as guaranteed by Idaho Constitution art. 1, § 18, commonly referred to as the "open courts" provision.

§ 18. **Justice to be freely and speedily administered.**—Courts of justice shall be open to every person, and a speedy remedy afforded for every injury of person, property or character, and right and justice shall be administered without sale, denial, delay or prejudice.

ID CONST. art. 1, § 18.

Olsen asserts that this article of the Constitution prohibits the legislature from abolishing a right of action existing at common law without substituting some other means for redress.

■ At the outset, we again observe that the legislature clearly has the power to abolish or modify common law rights and remedies. *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977). A statute placing limitations on remedies does not contradict the provision of the Idaho Constitution that courts of justice shall be open to every person and a speedy remedy afforded for every injury of person. *Id.* In *Jones*, this Court stated: "The legislature may at any time by a legislative act repeal any part of the common law either expressly or by passage of an act inconsistent therewith on any particular subject." *Vogts v. Guerrette*, 142 Colo. 527, 351 P.2d 851, 865 (1960). In *Cummings v. J.R. Simplot Co.*, 95 Idaho 465, 511 P.2d 282 (1973), a statute was held constitutional which provided that the time for making a claim for an industrial injury should commence to run from the date of the accident, not from the date of manifestation of compensable injuries, even though the statute acted to preclude recovery for a particular claimant or group of claimants. It is well established that the "open courts" provision governing access to courts of justice does not prohibit the legislature from abolishing or modifying a common-law right of action. *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982); *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), *cert. denied*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977).

■ The principle which allows the legislature to modify the rules of the common law is not a recent change in the law of this jurisdiction. In *Moon v. Bullock*, 65 Idaho 594, 151 P.2d 765 (1944), the Supreme Court stated, "[W]e must recognize that it is the province of the Legislature, and not of the court, to modify the rules of the common law." 65 Idaho at 607, 151 P.2d at 771. This principle certainly is not unique to Idaho. In *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 101 S.Ct. 715, 66 L.Ed.2d 659 (1981), the United States Supreme Court stated:

The Minnesota Supreme Court may be correct that the act is not a sensible

means of conserving energy. But we reiterate that "it is up to the legislatures, not courts, to decide on the wisdom and utility of legislation."

101 S.Ct. at 726.

Olsen urges this Court to follow the decision of the Supreme Court of Utah in *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985), which held a similar statute unconstitutional where there is no substitute or alternative remedy provided. The Utah court held abrogation of the remedy or cause of action may be justified under the open courts provision of the Constitution only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective.[9] Unlike Idaho's statute of repose, the Utah statute was *absolute* and barred all legal actions for death, personal injury, or damage to property caused by a defective product, if the action is filed more than six years after the date of first sale for "use or consumption," or ten years after the date of manufacture. U.C.A.1953, § 78–15–1. Although *Berry* is attractive and persuasive at first glance, a careful review and analysis reveals substantial differences in the Utah statute and I.C. § 6–1403, primarily in the presence of a rebuttable presumption in the Idaho statute and the absence of a rebuttable presumption in the Utah statute.

Despite differences and variations in legal theories and statutes, a common theme is found among court decisions upholding the constitutionality of product liability statutes of repose. Many courts have expressed concern that a strict interpretation of the open court clause would restrict the legislature's ability to enact new laws and repeal old laws and that such restrictions upon the legislature could freeze common law rights in perpetuity. *Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647 (1976); *Josephs v. Burns*, 260 Or. 493, 491 P.2d 203 (1971). The Pennsylvania Supreme Court expressed its concern and analyzed the issue as follows:

> This court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the "common law" and certain non-constitutional decisions of the courts above all rules of the "common law" and certain non-constitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law.

*Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715, 721 (1978).

The United States District Court for the Eastern District of Tennessee addressed this issue and reasoned as follows:

**9.** The Utah Court in *Berry v. Beech Aircraft Corp.*, held that the open courts provision is satisfied only if the law provides an injured person an effective and reasonable alternative remedy by due course of law for vindication of his constitutional interest. Idaho's "rebuttable presumption" language satisfies constitutional scrutiny under this analysis, and I.C. § 6–1303 is therefore distinguishable from its Utah counterpart ruled unconstitutional in *Berry*. Likewise, Olsen's reliance on *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288 (1983), is misplaced and distinguishable because New Hampshire Statute 507–D:2 contains an absolute bar without the rebuttable presumption provision. The legislature must be given the sound discretion to amend the law as society's needs require. To adopt an inflexible rule prohibiting the legislature would deny the need for an ever-

changing analysis of society's needs. The 1971 Idaho legislature made sweeping changes in the common law by the enactment of the Idaho Tort Claims Act, I.C. § 6–901 et seq., and the adoption of the comparative negligence laws of I.C. § 6–801. Both of these statutes clearly modified the preexisting common law. The enactment of the Idaho Tort Claims Act and the comparative negligence laws of this state would have been prevented if a strict and inflexible standard limiting the discretion of the legislature were to be imposed. Accordingly, a strict interpretation of the open court clause of art. 1, § 18 of the Idaho Constitution is not violated and does not prohibit the legislature's ability to enact new laws and repeal old laws as the need arises.

Reasons of sound policy have led to the general adoption of laws of both descriptions [statutes of limitation and repose], and their validity cannot be questioned. The time and manner of their operation, the exceptions to them, and the acts from which the time limited shall begin to run, will generally depend on the sound discretion of the legislature, according to the nature of the titles, the situation of the country and the emergency which leads to their enactment. Cases may occur where the provisions of a law on those subjects may be so unreasonable as to amount to a denial of a right, and call for the interposition of the court; but the present is not one.

*Hargraves v. Brackett Stripping Mach. Co.*, 317 F.Supp. 676, 683 (E.D.Tenn.1970), quoting *Jackson ex dem. Hart v. Lamphire*, 28 U.S. (3 Pet.) 280, 7 L.Ed. 679 (1830).

The role of the judiciary is limited when encountering a limitation when considering legislation, including a statute of repose. The words of former Chief Justice Donaldson in *Leliefeld* warrant repeating:

So long as the statute is constitutional, we have no intrinsic ability to review its inherent wisdom or, if it seems unwise, the power to change it. Whenever lines are drawn by legislation, some may seem unwise, but the responsibility for drawing these lines rests with the legislature and judicial review is limited.

104 Idaho at 375, 659 P.2d at 129.

Accordingly, having found the statute to be constitutional, we limit our review as directed in *Leliefeld*. The statute of repose contained in I.C. § 6–1403 does not violate the "open courts" provision of art. 1, § 18 of the Idaho Constitution, *cf. Sealey v. Hicks*, 309 Or. 387, 788 P.2d 435 (1990), and we reaffirm the well-established principle of law in this jurisdiction that it is the province of the legislature to modify the rules of the common law.

## V.

### Rebuttable Presumption By Clear and Convincing Evidence

Olsen further contends that although Idaho's statute of repose does not "absolutely" cut off potential rights, it is nevertheless fatally flawed and violates his due process rights. He asserts that the presumption, by requiring rebuttal by "clear and convincing" evidence, imposes an unreasonable standard upon common law protected rights.

Some jurisdictions have determined that the power to enact statutes of repose that preclude a cause of action is implicit in the legislature's power to abolish rights that have not yet vested. *Rosenberg v. Town of N. Bergen*, 61 N.J. 190, 293 A.2d 662, 667 (1972); *Dague v. Piper Aircraft Corp.*, 275 Ind. 520, 418 N.E.2d 207 (1981). In *Rosenberg*, the Supreme Court of New Jersey explained that a cause of action does not accrue until a careless act results in injury or damage, and observed that the statute in question,

... does not bar a cause of action; its effect, rather, is to prevent what might otherwise be a cause of action, from ever arising. Thus injury occurring more than ten years after the negligent act allegedly responsible for the harm, forms no basis for recovery. The injured party literally has no cause of action.... The function of the statute is thus rather to define substantive rights than to alter or modify a remedy. The Legislature is entirely at liberty to create new rights or abolish old ones as long as no vested right is disturbed.

293 A.2d at 667.

This Court has held that the common law can nearly always be modified by the legislature provided that the enactment is not unconstitutional, and that the common law is in effect only to the extent that it is not repugnant or inconsistent with legislative enactments. *See State v. McCoy*, 94 Idaho 236, 486 P.2d 247 (1971); *Doggett v. Boiler Eng'g & Supply Co.*, 93 Idaho 888, 477 P.2d 511 (1970). In *Jones v. State Bd. of Medicine*, 97 Idaho 859, 555 P.2d 399 (1976), we held "nothing in Art. 1, § 18 of our Constitution either explicitly or implicitly prohibits legislative modification of common law actions." 97 Idaho at 864, 555

P.2d at 404. It is clear that the legislature has modified the common law by the enactment of I.C. § 6–1403. Were this not so the 1971 Idaho legislature could not have made wide sweeping changes in the common law by the enactment of the Idaho Tort Claims Act abolishing governmental immunity, I.C. § 6–901, and abolishing the absolute common law bar of contributory negligence by adoption of comparative negligence. I.C. § 6–801.

Olsen's injury did not occur until after the statute of repose was enacted, and as such, a cognizable liberty or property interest has not been affected. In any event, no showing whatsoever was made by Olsen to rebut the presumption that the "useful safe life" of the hay baler had not expired. Olsen's challenge to the "clear and convincing" evidence requirement is moot because he failed to provide any evidence of any weight to rebut the presumption. There is nothing before the Court with regard to this argument because Olsen failed to present any evidence to rebut the presumption, and we therefore wait until another day when the issue is presented to us to determine whether the evidentiary standard of "clear and convincing" evidence as set forth in I.C. § 6–1403 imposes an unreasonable standard upon common law protected rights.

## VI.

*Standard For Summary Judgment*

Olsen contends that the district court abused its discretion in granting defendant's motions for summary judgment because factual issues were raised by the pleading, affidavits and depositions.

█ Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). The law is well established in Idaho that on a motion for summary judgment, the court must determine whether the pleadings, depositions, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Boise Car & Truck v. Waco, Inc.*, 108 Idaho 780, 702 P.2d 818 (1985); I.R.C.P. 56(c). Further, the standards for summary judgment require the district court to liberally construe the facts in favor of the non-moving party and to draw all reasonable inferences from the record in favor of the non-moving party. *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Meridian Bowling Lanes, Inc. v. Meridian Athlete Ass'n, Inc.*, 105 Idaho 509, 670 P.2d 1294 (1983); *Anderson v. Ethington*, 103 Idaho 658, 651 P.2d 923 (1982). All doubts are to be resolved against the moving party, and the motion must be denied if the evidence is such that conflicting inferences may be drawn therefrom, and if reasonable people might reach different conclusions. *Doe v. Durtschi*, 110 Idaho 466, 716 P.2d 1238 (1986); *Ashby v. Hubbard*, 100 Idaho 67, 593 P.2d 402 (1979).

█ Decisions by this Court demonstrate that when faced with a motion for summary judgment, the party against whom it is sought may not merely rest on allegations contained in his pleadings, but must come forward and produce evidence by way of deposition or affidavit to contradict the assertions of the moving party and establish a genuine issue of material fact. *Clarke v. Prenger*, 114 Idaho 766, 760 P.2d 1182 (1988); *Worthen v. State*, 96 Idaho 175, 525 P.2d 957 (1974); *Tri–State Nat'l Bank v. Western Gateway Storage Co.*, 92 Idaho 543, 447 P.2d 409 (1968); I.R.C.P. 56(e). *See also Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), which provides that the language of Rule 56 requires entry of summary judgment after adequate time for discovery against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and in which that party will bear the burden of

proof at trial. *Id.*, 106 S.Ct. at 2552–53.[10] Olsen simply did not meet his burden in responding to the facts or to rebutting the presumption. The facts contained in the record reveal that the hay baler Olsen was operating at the time of his injury was manufactured by Freeman in 1968 and sold to Leslie Davis & Son Implement. The eighteen-year-old baler was initially sold to Gary Hill, who traded it to Twin Falls Tractor & Implement on March 27, 1980. Twin Falls Tractor then sold the baler to Joe Albertson who subsequently traded the baler back to Twin Falls Tractor. It was then traded to Loren Strode who testified by way of deposition that the baler was simply "worn out" and that he had taken the baler completely apart and replaced numerous parts including some parts taken from other machinery. Strode also testified in his deposition that prior to the accident causing the injury he had totally rebuilt the baler on two occasions. Olsen contends that the disputed fact precluding summary judgment is that the baler that injured him was identical to balers being manufactured by Freeman at the present time. This fact is not disputed by the defendants, however, and Olsen failed to come forth with any other evidence or factual issues to oppose the summary judgment. The discovery process was available to plaintiff to obtain evidence that the product's useful safe life had not expired. The discovery had proceeded far enough that Olsen had retained and obtained the opinion of an expert, and Olsen had taken the deposition of Freeman's corporate officers. Nothing in the evidence submitted by affidavits or disclosed in the deposition and discovery process raised an issue to rebut the evidence that the useful safe life of the baler had expired. Plaintiff either could

not or did not take advantage of the opportunity to present evidence to rebut the presumption that the useful safe life of this particular product had not expired. The fact that Freeman balers presently being manufactured are similar to or even identical to the one involved in this action does not preclude summary judgment.

It is clear that upon application of the principles governing summary judgment proceedings to the facts presented in this action the district court did not err in granting summary judgment. Olsen failed to present any evidence that the baler's useful safe life had not expired which is necessary to rebut the statutorily imposed period of repose which, if that evidence had been presented, could have allowed his claim to avoid the bar of I.C. § 6–1403 and proceed to trial. Accordingly, the district court did not err in granting summary judgment.[11]

The judgment of the district court is affirmed in all respects. Costs to respondents.

BAKES, C.J., and JOHNSON and McDEVITT, JJ, concur.

BISTLINE, Justice, dissenting:

I must dissent from the holding of the majority in this case on two grounds: First, the majority's analysis of Olsen's claim that the statute violates the open courts provision of the Idaho Constitution is unsound; and second, even assuming *arguendo* that the statute is constitutional, the statutory limitation based on "useful safe life" should not have been applied to Olsen's claim of failure to warn. Each of these issues will be discussed in turn.

## I. THE OPEN COURTS PROVISION

The majority's analysis of this issue relies heavily on the fact that, unlike statutes

---

10. In *Badell v. Beeks*, 115 Idaho 101, 765 P.2d 126 (1988), this Court cited to *Celotex* and specifically adopted the principle that "[T]he moving party is entitled to judgment when the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial." 115 Idaho at 102, 765 P.2d at 127.

11. The district court in its memorandum decision and order, dated March 8, 1988, granted defendant J.S. Freeman's motion for summary judgment. In the same decision the district court granted defendant Loren Strode's motion for summary judgment in regard to any allegation of product liability, but denied the motion in regard to other theories of alleged liability.

of limitation in other states which have been found to violate those states' open courts provisions,[12] Idaho's statute merely creates a rebuttable presumption and thus does not absolutely bar plaintiffs' claims. On the surface this appears to present an attractive argument. However, it is possible to make such an argument only by turning a blind judicial eye to the practical realities present in these cases. This the majority has chosen to do, and in the process it has also chosen to rely on a distinction without a difference in order to foreclose a valid constitutional challenge to the statute.

The majority opinion refers several times to the "rebuttable presumption provision" of I.C. § 6–1403.[13] However, never in this section of the opinion does the majority discuss the language of that theoretically "rebuttable" presumption. If it were to deign to do so, the majority would have to acknowledge that while the statute is cast in terms of a supposed "rebuttable" presumption, in practical application the rebuttal burden on plaintiffs is so heavy that the presumption is rebuttable in name only.

*Ordinary* rebuttable presumptions should be well understood since the trial bar and bench received the opinion in *Bongiovi v. Jamison*, 110 Idaho 734, 738, 718 P.2d 1172, 1176 (1986), where the Court approvingly set forth the text of Idaho Rule of Evidence 301:

**Presumptions in general in civil actions and proceedings.**—In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

As explained and better worded by Justices Bistline and Donaldson, in their special concurrence in *Keenan v. Brooks*, 100 Idaho 823, 828, 606 P.2d 473, 478 (1980), once a presumption arises, "it is the burden of going forward sufficiently to dispel the presumption which shifts—not the burden of persuasion." [14] In contrast to *Bongiovi* and *Keenan*, the "rebuttable" presumption in I.C. § 6–1403(2)(a) is defined as follows:

**Length of time product sellers are subject to liability.**—(2) Statute of repose.

(a) Generally. In claims that involve harm caused more than ten (10) years after time of delivery, a presumption arises that the harm was caused after the useful safe life had expired. *This presumption may only be rebutted by clear and convincing evidence.*

(Emphasis added.) In practice, this means that once the manufacturer has produced evidence showing that the product was delivered more than ten years before the plaintiff's injury, the plaintiff must produce *clear and convincing evidence* simply to avoid entry of a summary judgment of dismissal and the resulting denial of the opportunity to have a jury be the trier of

---

12. *See, e.g., Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985); *Heath v. Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288 (1983).

13. *See, e.g.,* 117 Idaho at 717, 791 P.2d at 1296 ("notwithstanding its rebuttable presumption provision"); 117 Idaho at 718, 791 P.2d at 1297 ("Idaho's 'rebuttable presumption' language satisfies constitutional scrutiny ...; and Olsen's reliance on a New Hampshire case "is misplaced and distinguishable because New Hampshire Statute 507–D:2 contains an absolute bar without the rebuttable presumption provision"); 117 Idaho at 718, 791 P.2d at 1297 (the substantial difference between the Utah statute which

was held to be unconstitutional and the Idaho statute is "primarily in the presence of a rebuttable presumption in the Idaho statute and the absence of a rebuttable presumption in the Utah statute").

14. In that same opinion is found the reason for the uncertainty created by *McNabb v. Brewster*, 75 Idaho 313, 272 P.2d 298 (1954), namely the citation in *McNabb* to California authority which interchangeably used burden of proof and burden of producing evidence, although in doing so the California courts were aware that they were not shifting the burden of persuasion. 100 Idaho at 828, 606 P.2d at 478.

fact. Such is a daunting prospect for a plaintiff. Also, generally a motion for summary judgment based on a statute of repose would come fairly early in the proceedings, before a great deal of discovery has been done. Yet, in this context the plaintiff must essentially conduct and prevail in a mini-trial on the issue of the "useful safe life" of the product which caused the injury; otherwise the plaintiff cannot avoid being out of court on summary judgment motion.

The imposition of such an onerous requirement on products liability plaintiffs is tantamount to an absolute bar to the claims of those plaintiffs. Since the majority's reasoning in support of the statute's constitutionality rests on this demonstrably suspect distinction between "absolute bar" and "rebuttable presumption", that reasoning is suspect as well. Idaho Code § 6–1403 effectively forecloses a claimant's cause of action before it truly can be said to have accrued. As such it is a prima facie violation of art. 1, § 18 of the Idaho Constitution.

## II. A "USEFUL SAFE LIFE" DEFENSE IS INCONSISTENT WITH A CLAIM FOR FAILURE TO WARN

Even were one to assume, merely for the sake of argument, that the statute of repose at issue here is constitutional, it should not have been applied to dismiss Olsen's claim for failure to warn. The statute of repose is based on the concept of the "useful safe life" of a product. "Useful safe life" is a very logical defense in the context of those suits which are based on design defect or defective manufacture of a product. Tied as it is to foreseeability, "useful safe life" offers a relatively objective and consistent point at which it is no longer reasonable to hold the manufacturer liable because the safe use of the product after that time was not reasonably foreseeable.

This logic breaks down in two ways when the attempt is made to apply a "useful safe life" defense to a failure to warn claim. First, the duty to warn arises because there is some danger inherent in the use of the product. Restatement (Second) of Torts § 388 (1965). Thus, at least as to the aspect of the product for which a warning should have been made, there is no "useful *safe* life" at all—the product started out in a dangerous condition, and it was the warning which would have made it "safe" for use. Thus the "useful safe life" of the product cannot expire because it never existed.

The second reason a "useful safe life" defense is inconsistent with a claim for failure to warn has to do with the ongoing nature of the duty to warn. The "useful safe life" of a product, at least as that term is defined in I.C. § 6–1403, begins to run as soon as the product is delivered to its first purchaser, and presumptively expires ten years after that delivery. On the other hand, the duty to warn is an ongoing one, and while it may arise at the time of delivery, it may also arise at a much later time, perhaps even after the presumptive "useful safe life" has expired. *See, e.g., Readenour v. Marion Power Shovel*, 149 Ariz. 442, 719 P.2d 1058 (1986). *See also Lockwood v. AC & S, Inc.*, 109 Wash.2d 235, 744 P.2d 605 (1987); *Wooderson v. Ortho Pharmaceutical Corp.*, 235 Kan. 387, 681 P.2d 1038 (1984).

The time period established in the "useful safe life" statute of repose is simply inconsistent with the continuing nature of the duty to warn. Thus the statute of repose should not apply at all to a claim asserting that the manufacturer breached its duty to warn. The trial court's erroneous use of the statute of repose as a predicate for dismissal of Olsen's claim against Freeman for failure to warn requires therefore that the judgment be reversed and/or vacated, and that the claim be reinstated for further proceedings.