# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CINDY MAXWELL, as Personal Representative of the Estate of Edmond Brown, and MARILOU BROWN, | No. 53252-2-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| ATLANTIC RICHFIELD CO.; BECHTEL CORPORATION; CBS CORPORATION, a Delaware Corporation f/k/a Viacom, Inc., successor by merger to CBS CORPORATION, a Pennsylvania Corporation f/k/a WESTINGHOUSE ELECTRIC CORPORATION and TOTAL ENGINEERED MAINTENANCE COMPANY; CRANE CO.; FOSTER WHEELER ENERGY CORPORATION; METALCLAD INSULATION CORPORATION; METROPOLITAN LIFE INSURANCE COMPANY, INC.; SABERHAGEN HOLDINGS, INC.; SEQUOIA VENTURES INC., f/k/a BECHTEL CORPORATION; UNION CARBIDE CORPORATION, | |
| Defendants, | |
| BRAND INSULATIONS, INC. and PARSONS GOVERNMENT SERVICES, INC., | |
| Respondents. | |

MAXA, J – Cindy Maxwell, the personal representative of the Estate of Edmond Brown,

and Marilou Brown (collectively the Browns) appeal the trial court's order granting summary

judgment in favor of Parsons Government Services, Inc. (Parsons) and Brand Insulations, Inc.

(Brand). The lawsuit arose from Edmond's[1] alleged exposure to asbestos between 1971 and 1972 during the construction of Atlantic Richfield Corporation's (ARCO) petroleum refinery at Cherry Point in Ferndale. Parsons was the general contractor who constructed the Cherry Point refinery and Brand was the insulation subcontractor who installed asbestos-containing insulation and gaskets during construction of the refinery. Edmond was diagnosed with mesothelioma, an asbestos-related disease, in 2018.

The trial court granted summary judgment in favor of both Parsons and Brand based on RCW 4.16.300 and RCW 4.16.310, which provide a six-year statute of repose for claims arising from the construction of improvements upon real property. The Browns argue that questions of fact exist regarding application of the construction statute of repose to their claims against both parties.

We hold that (1) both Parsons and Brand satisfied the "construction activities" requirement of RCW 4.16.300 because there is no evidence that the Browns' claims arose from Parsons' and Brand's sale of asbestos-containing insulation rather than from their construction activities; (2) both Parsons and Brand satisfied the "improvement upon real property" requirement of RCW 4.16.300 because the installation of the insulation occurred during the construction of the Cherry Point refinery, which was an improvement upon real property; and (3) the Browns' argument based on the 2004 amendment to RCW 4.16.300 has no merit because the 1967 version of the statute applies in this case. Therefore, we affirm the trial court's grant of summary judgment in favor of Parsons and Brand.

---

[1] To avoid confusion, this opinion refers to Edmond Brown by his first name. No disrespect is intended.

FACTS

*Background*

In 1968, ARCO hired Parsons[2] as the design-build general contractor for the construction of ARCO's Cherry Point petroleum refinery. The contract identified the work to be performed as "the design, engineering, purchasing and construction of the Refinery." Clerk's Papers (CP) at 54. Specifically, Parsons' scope of work included the "design, engineering and construction" of the refinery and the purchase of all necessary "equipment, machinery, apparatus, materials and supplies." CP at 54.

The contract provided that Parsons would be compensated on a "cost plus" basis. CP at 117. Under this arrangement, Parsons was reimbursed for actual costs incurred, including amounts paid for labor, machinery, materials, and under subcontracts, plus an additional percentage of those costs. Parsons would purchase construction materials and would receive reimbursement from ARCO under the contract.

Parsons subcontracted with Brand to install thermal insulation and gaskets for certain portions of the refinery. Specifically, Brand's scope of work was the "installation of thermal insulation of columns, heat exchangers, vessel, reformers, tanks and piping in the various refinery units" for the refinery. CP at 126. The subcontract identified 16 units and areas where Brand would install the insulation. Brand was responsible for furnishing the materials needed to complete the insulation work. The subcontract required Parsons to pay Brand's actual invoice costs for materials that Brand used to complete the work.

---

[2] At that time, Parsons was known as The Ralph M. Parsons Company.

Some of the insulating materials Brand installed, including cement and tape, contained asbestos. Brand would use hand saws to cut the insulation in order to install it, which created dust that contained asbestos.

Brand performed its work on the Cherry Point refinery project between January 1971 and March 1972. Substantial completion of the entire project was in June 1972.

Between 1971 and 1985, Edmond worked as a technician and operator in the coker unit of the Cherry Point refinery. Brown's duties included cleaning debris, picking up insulation, and sweeping dust.

In 2018, Edmond was diagnosed with mesothelioma. The Browns filed a lawsuit in Pierce County Superior Court against multiple defendants, including Parsons and Brand, for personal injuries sustained due to asbestos exposure. The Browns asserted liability based on multiple theories.

In interrogatory answers, the Browns alleged that their claims against Parsons were based on Parsons' "work designing and constructing" the Cherry Point refinery. CP at 221. Specifically, the Browns claimed that Parsons was liable for (1) directing and requiring the use of asbestos-containing insulation; (2) supplying for use asbestos-containing insulation; and (3) directing, supervising and otherwise participating in the installation of asbestos-containing insulation. Brown alleged that Brand was one of the entities that had supplied the insulation.

Parsons and Brand moved for summary judgment under RCW 4.16.300 and .310, the construction statute of repose. The trial court granted summary judgment in favor of both Parsons and Brand. The court stated, "[I]f indeed the statute of repose does not govern this, I don't know when the statute of repose would." Report of Proceedings at 38.

The Browns appeal the trial court's summary judgment order.

4

ANALYSIS

A.    SUMMARY JUDGMENT STANDARD

We review a trial court's decision on a summary judgment motion de novo. *Zonnebloem, LLC v. Blue Bay Holdings, LLC*, 200 Wn. App. 178, 182, 401 P.3d 468 (2017). Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Id.*; CR 56(c). A genuine issue of material fact exists if reasonable minds could disagree on the conclusion of a factual issue. *Id.* at 182-83. We view all facts and reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Id.* at 182.

The moving parties – here, Parsons and Brand – bear the initial burden of proving that there is no genuine issue of material fact. *Id.* at 183. Once a moving defendant shows that there is an absence of evidence to support the plaintiff's case, the burden shifts to the plaintiff to present specific facts that rebut the defendant's contentions and show a genuine issue of material fact. *Id.*

B.    CONSTRUCTION OF STATUTE OF REPOSE

1.    Statutory Language

"A statute of repose terminates the right to file a claim after a specified time even if the injury has not yet occurred." *Wash. State Major League Baseball Stadium Pub. Facilities Dist. v. Huber, Hunt & Nichols-Kiewit Constr. Co.*, 176 Wn.2d 502, 511, 296 P.3d 821 (2013).

The construction statute of repose is set forth in RCW 4.16.300 and .310.[3]

---

[3] RCW 4.16.300 and .310 were enacted in 1967, and have been amended twice since then. However, the operative language relevant to this appeal has remained unchanged except where noted. Therefore, we cite to the current versions of the statutes.

RCW 4.16.300 states,

> RCW 4.16.300 through 4.16.320 shall apply to all claims or causes of action of any kind against any person, *arising from such person having constructed, altered or repaired any improvement upon real property*, or having performed or furnished any design, planning, surveying, architectural or construction or engineering services, or supervision or observation of construction, or administration of construction contracts for any construction, alteration or repair of any improvement upon real property.

(Emphasis added). RCW 4.16.310 states,

> All claims or causes of action as set forth in RCW 4.16.300 shall accrue, and the applicable statute of limitation shall begin to run only during the period within six years after substantial completion of construction, or during the period within six years after the termination of the services enumerated in RCW 4.16.300, whichever is later. . . . Any cause of action which has not accrued within six years after such substantial completion of construction, or within six years after such termination of services, whichever is later, shall be barred.

In other words, any cause of action arising from construction-related activities as defined in RCW 4.16.300 on an improvement upon real property is barred unless it accrues within six years after substantial completion or termination of such services.

    2.    Interpretation of RCW 4.16.300

The Browns argue that RCW 4.16.300 must be interpreted narrowly, and that the legislature enacted the construction statute of repose only to protect defendants from the liability of others and forces beyond their control. They suggest that the statute of repose is inapplicable when a plaintiff seeks to hold a defendant liable for its own negligence.

Parsons argues that the language of RCW 4.16.300 is broad and sweeping and should be applied expansively. Brand emphasizes that the construction statute of repose was designed to protect contactors from stale claims.

In *1519-1525 Lakeview Boulevard Condominium Ass'n v. Apartment Sales Corp.*, the Supreme Court stated that one purpose of the construction statute of repose was to protect

6

contractors from possibly being held liable for the acts of others. 144 Wn.2d 570, 577, 29 P.3d 1249 (2001). However, the court also recognized two other purposes: (1) to "limit[] the discovery rule and avoid[] placing too great a burden on defendants who construct improvements upon real estate," and (2) to "prevent plaintiffs from bringing stale claims when evidence might have been lost or witnesses might no longer be available." *Id.* at 578.

Courts have not expressly discussed whether the construction statute of repose should be applied narrowly or broadly. However, there is no question that the language of RCW 4.16.300 is quite expansive. The statute of repose applies to "*all claims or causes of action of any kind against any person, arising from such person having constructed, altered or repaired any improvement upon real property.*" RCW 4.16.300 (emphasis added). One court called the language "broad and sweeping." *Parkridge Assocs., Ltd. v. Ledcor Indus., Inc.*, 113 Wn. App. 592, 602, 54 P.3d 225 (2002).

It is unnecessary for us to adopt either a narrow or a broad interpretation of RCW 4.16.300. Instead, we apply the plain statutory language and applicable case law.

C.      APPLICATION OF CONSTRUCTION STATUTE OF REPOSE

The Browns argue that the construction statute of repose is inapplicable here because (1) their claims arose from Parsons' and Brand's sale of the insulation rather than their construction activities and (2) the asbestos-containing insulation giving rise to their claims did not involve an "improvement upon real property" as required under RCW 4.16.300. We disagree.

1.      Legal Principles

RCW 4.16.300 states that the construction statute of repose in RCW 4.16.310 applies if a claim arises from (1) the construction, alteration or repair (2) of an improvement upon real property. Both requirements are at issue in this case.

First, the statute of repose applies only to causes of action "arising from" certain construction activities: construction, alteration, and repair as well as "design, planning, surveying, architectural or construction or engineering services"; supervision or observation of construction; and administration of construction contracts. RCW 4.16.300. "Each of these activities relates to the process of building a structure." *Condit v. Lewis Refrigeration Co.*, 101 Wn.2d 106, 110, 676 P.2d 466 (1984). If a claim does not arise from one of these specified activities, the statute of repose does not apply.

Based on this requirement, the statute of repose does not apply to claims that are not related to construction activities. *Pfeifer v. City of Bellingham*, 112 Wn.2d 562, 568-69, 772 P.2d 1018 (1989). For example, causes of action arising out of the sale of a building or the defendant's status as the building's owner do not invoke the statute of repose. *Id.* at 568-70 (concealment of a dangerous condition when selling a building); *Cameron v. Atlantic Richfield Co.*, 8 Wn. App. 2d 795, 805-06, 442 P.3d 31 (2019) (claims arising from activities as premises owner). The court in *Pfeifer* stated, "Selling and building involve different activities. The statute shields builders. If builders also engage in the activity of selling, they should face the liability of sellers." 112 Wn.2d at 568.

Significant here, the construction statute of repose also does not apply to claims against the seller of a product incorporated into a real property improvement. *Morse v. City of Toppenish*, 46 Wn. App. 60, 62-66, 729 P.2d 638 (1986). In *Morse*, the court held that the construction statute of repose did not apply to a product liability claim against the manufacturer and seller of a diving board incorporated into a swimming pool, which was a real property improvement. *Id.*

Second, the construction statute of repose applies only to claims arising from the construction of an "improvement upon real property." RCW 4.16.300. In *Condit*, the court distinguished between "individuals whose activities relate to construction of the improvement" and "those who service or design items within the improvement." 101 Wn.2d at 110. The statute of repose applies only to the construction of the structural aspects of a building. *Id.* at 110-11. Also included are " 'those systems, ordinarily mechanical systems, such as heating, electrical, plumbing and air conditioning, which are integrally a normal part of that kind of improvement, and which are required for the structure to actually function as intended.' " *Id.* at 110-11 (quoting *Brown v. Jersey Central Power & Light Co.*, 163 N.J. Super. 179, 195, 394 A.2d 397 (1978)). Such systems "must actually be integrated into and a part of the structure itself." *Puente v. Resources Conservation Co. Int'l*, 5 Wn. App. 2d 800, 812, 428 P.3d 415 (2018), *review denied*, 192 Wn.2d 1021 (2019).

Conversely, the construction statute of repose does not apply to "manufacturers of heavy equipment or nonintegral systems within the building." *Condit*, 101 Wn.2d at 111. Nor does the statute of repose apply to work regarding "accout[re]ments to the manufacturing process taking place within the improvement." *Id.* at 112.

In *Condit*, a refrigeration company manufactured and installed a freezer tunnel system equipped with a conveyor belt in an existing food processing plant. *Id.* at 108. The plaintiff was injured 14 years later while cleaning the conveyor belt and filed a product liability lawsuit against the installer. *Id.* The court concluded that the construction statute of repose did not apply because the refrigeration unit and conveyor belt that caused injury to the plaintiff was not an improvement upon real property. *Id.* at 112. Instead, the unit was part of the "manufacturing process taking place within the improvement." *Id.* (emphasis added). Therefore, the defendant

9

was more properly subject to product liability law and its statute of limitations than the construction statute of repose. *Id.*

The court distinguished *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, where the defendant contactor installed a refrigeration system in a warehouse so it could be used for cold storage. 81 Wn.2d 528, 529, 503 P.2d 108 (1972). The court in *Condit* stated, "The refrigeration system, unlike the freezer tunnel here in issue, was an integral part of the warehouse." 101 Wn.2d at 112.

In *Puente*, the owner of a facility that manufactured aluminum foil retained a general contractor to expand its environmental building to allow for the installation of a new and larger boric acid evaporator system (BAES) to convert liquid boric acid into distilled water and solid waste. 5 Wn. App. 2d at 802-03. The general contractor retained a company to install the new BAES. *Id.* at 803. Ten years after the installation, a worker was killed while performing maintenance on the BAES, and his estate filed a negligence and product liability lawsuit against the installation company. *Id.* at 805-06. The court stated that for the construction statute of repose to apply, a system must be integrated into the structure itself. *Id.* at 812. The court acknowledged that the BAES was integral to the manufacturing system that was located in the facility, but was not integral to the environmental building itself. *Id.* at 811-12. Instead, the BAES was simply located in the building. *Id.* at 812. Therefore, the court held that the BAES was merely an " 'accoutrement[ ] to the manufacturing process taking place within the improvement' " and that installation of the BAES did not fall within the scope of the statute of repose. *Id*. at 813 (quoting *Condit*, 101 Wn.2d at 112).

Significantly, neither of these cases involved claims against a general contractor hired to construct an entire building or a subcontractor retained to assist in that construction for an injury caused by a component part of that building. And no other reported cases address the "improvement upon real property" requirement in the context of claims against general contractors or their subcontractors.

2.     Arising from Construction Activities

The first requirement for application of the construction statute of repose is that the cause of action arise from certain construction activities. RCW 4.16.300; *Pfeifer*, 112 Wn.2d at 568-69. The Browns argue that the statute of repose is inapplicable here because there is a genuine issue of material fact whether their claims arose from Parsons' and Brand's sale of the asbestos-containing insulation rather than their construction activities.[4] We disagree.

a.     Claims Against Parsons

The Browns argue that Parsons sold the asbestos-containing insulation at issue to ARCO, and therefore that their claims against Parsons arose from Parsons' sales activities and not its construction activities. We disagree.

First, the Browns claim that the contract between Parsons and ARCO stated that Parsons was to sell to ARCO the materials to construct the refinery, and that Parsons billed ARCO for these materials. But the contract between Parsons and ARCO did not call for the "sale" of materials from Parsons to ARCO. The contract required Parsons to purchase all materials and

---

[4] The Browns also suggest that the statute of repose does not apply when a contractor or a subcontractor "supplies" materials for the contractor's use in a construction project even if no sale is involved. But the Browns provide no argument regarding this suggestion and cite no authority to support its position. Therefore, we do not address it. *Long v. Snoqualmie Gaming Comm'n*, 7 Wn. App. 2d 672, 690, 435 P.3d 339, *review denied*, 193 Wn.2d 1031 (2019).

supplies necessary to complete the refinery.  In exchange, ARCO agreed to reimburse Parsons for all chargeable costs, including the cost of materials, plus a percentage fee.  This agreement does not mean that Parsons "sold" the materials to ARCO.

Second, the Browns claim that Parsons' invoices for insulation show that Parsons sold them to ARCO.  But Parsons' invoices and purchase orders in the record do not support this claim.  The invoices show that between 1970 and 1972, Parsons purchased insulation and gaskets from Metalclad Insulation, Scott-Groves Company, and E. J. Bartells Company.  Again, ARCO reimbursed Parsons for these purchases under the terms of the contract, but that does not mean that Parsons "sold" the materials to ARCO.

Third, the Browns claim that Parsons made progress reports to ARCO that differentiated between Parsons' roles as a builder and as a seller of building materials.  The progress reports from Parsons to ARCO separately summarized project activity, construction activity, and purchasing activity.  But the report does not suggest that Parsons had separate roles as a builder and as a seller of building materials.

The Browns essentially argue that because Parsons purchased materials for the construction of the refinery and the contact required ARCO to reimburse Parsons for those purchases, Parsons somehow sold those materials to ARCO.  But the Browns provide no authority for their suggestion that a general contractor receiving reimbursement from the project owner for materials used in the construction project constitutes a "sale" of those materials to the owner.

We conclude that there are no genuine issues of fact as to whether the Browns' claims against Parsons arose from construction activities as opposed to sale activities.

b. Claims Against Brand

The Browns argue that Brand sold the asbestos-containing insulation at issue to Parsons, and therefore that their claims against Brand arose from Brand's sales activities and not its construction activities. We disagree.

The subcontract between Parsons and Brand provided that Brand was responsible for furnishing the materials needed to complete the insulation work, and that Parsons would reimburse Brand for the actual cost of those materials. The subcontract provided separate approved amounts for materials and labor, and Brand sent Parsons requests for progress payments that listed materials and labor separately. But nothing in the subcontract stated that Brand would "sell" insulation materials to Parsons.

The Browns essentially argue that because Brand purchased insulations materials and the subcontract required Parsons to reimburse Brand for those purchases, Brand somehow sold those materials to Parsons. But the Browns provide no authority for their suggestion that a subcontractor receiving reimbursement from the general contractor for materials used in the construction project constitutes a "sale" of those materials to the general contractor.

We conclude that there are no genuine issues of fact as to whether the Browns' claims against Brand arose from construction activities as opposed to sale activities.

3. Improvement Upon Real Property

The second requirement for application of the construction statute of repose is that the claim arising from construction activities involve an "improvement upon real property." RCW 4.16.300. The Browns argue that the statute of repose is inapplicable here because there is a genuine issue of fact as to whether their claims arose from an improvement upon real property. We disagree.

13

a.    Framing the Issue

Initially, the Browns argue that the question is whether the insulation that Brand installed constituted an improvement upon real property.  But framing the issue this way is inaccurate.  RCW 4.16.300 refers to claims arising from a person having constructed an improvement upon real property.  Therefore, the question is whether the person's activities involved the construction of a real property improvement.  The focus is not on the materials that the person uses in the construction.

For example, a piece of lumber is not itself an improvement upon real property.  But a person who uses that lumber to frame a building would be involved in the construction of an improvement upon real property and would be protected by the statute of repose.

Therefore, the question here is not whether Brand's insulation itself was an improvement upon real property.  The question is whether Brand's installation of that insulation under its subcontract with Parsons involved the construction of an improvement upon real property.

b.    Analysis

Four undisputed facts support the conclusion that the Browns' claims arose from Parsons and Brand having constructed an improvement upon real property: (1) the Cherry Point refinery was an improvement upon real property, (2) Parsons was retained as the general contractor to construct the entire refinery, (3) Parsons retained Brand as a subcontractor to assist in the construction of the refinery, and (4) the Browns' claim arose from Brand's construction work on the refinery.

Relying on *Condit* and *Puente*, the Browns argue that summary judgment was inappropriate here because questions of fact exist as to whether Brand's insulation work involved piping and machinery within the refinery structure rather than the refinery structure itself.  And

they claim that the phrase "arising from" in RCW 4.16.300 requires that we focus only on the insulation portion of the project rather than on the entire refinery because Edmond's death was caused by the insulation.

However, neither *Condit* nor *Puente* addressed the liability of a general contractor retained to construct an improvement upon real property or the general contractor's subcontractor who assisted in that construction. In *Condit*, the defendant was the manufacturer and installer of a freezer tunnel system that was installed *within* an *existing* real property improvement – a food processing plant. 101 Wn.2d at 108. The court expressly distinguished between persons who construct an improvement and persons who merely install systems that are located in the improvement: "[T]he statute focuses on individuals whose activities relate to construction of the improvement, rather than those who service or design items within the improvement." *Id.* at 110.

In *Puente*, the defendant was the manufacturer and installer of a BAES used in the manufacturing process that was installed *within* an *existing* real property improvement – an environmental building. 5 Wn. App. 2d at 801-2. The general contractor who constructed an expansion of the environmental building to accommodate the system was not sued. *Id.* at 802, 805. The court distinguished between the environmental building itself – which the court implied was an improvement upon real property – and the evaporator system, which was merely located within the improvement. *Id.* at 812-13.

Here, unlike the defendants in *Condit* and *Puente*, Parsons actually constructed the improvement upon real property – the Cherry Point refinery. Parsons subcontracted with Brand to perform a portion of that construction – the installation of insulation in certain parts of the refinery. There is no indication that either Parsons or Brand manufactured or installed some

independent system that was merely housed within the refinery structure. Instead, Parsons contracted to construct the entire refinery. And the entire refinery included the "columns, heat exchangers, vessel, reformers, tanks and piping in the various refinery units" that Brand subcontracted to insulate. CP at 126. Using the language of *Condit*, Parsons and Brand were "individuals whose activities relate[d] to construction of the improvement." 101 Wn.2d at 110.

Further, the insulation work occurred during and as part of the original construction of the improvement upon real property. Brand's work on the project ended before substantial completion of the refinery. Unlike in *Condit* and *Puente*, Brand did not merely install a new system within an existing real property improvement.

Finally, as the Browns suggest, the phrase "arising from" in RCW 4.16.300 does require us to focus on Brand's installation of insulation because the insulation allegedly caused Edmond's death. But that focus does not preclude Parsons or Brand from satisfying the improvement upon real property requirement. The installation of the insulation related to Parsons' construction of the entire refinery.[5]

We conclude that there are no questions of fact regarding whether the Browns' claims against arise from Parsons and Brand having constructed an improvement upon real property.

4.    Summary

There are no genuine issues of fact regarding the application of the construction statute of repose to Parsons and Brand. Accordingly, we hold that the trial court did not err in granting summary judgment in favor of Parsons and Brand.

---

[5] Parsons and Brand also could have satisfied the improvement upon real property requirement under *Condit* by showing that the insulation Brand installed was an integral part of the refinery necessary for the refinery to operate as intended. 101 Wn.2d at 110-11. However, they did not submit any specific evidence regarding this issue.

D.      2004 AMENDMENT TO RCW 4.16.300

The Browns argue that summary judgment was inappropriate because under the current version of RCW 4.16.300 that includes a 2004 amendment, Parsons and Brand failed to provide evidence showing the work they performed was regulated under RCW 18.08.310, 18.27.020, 18.43.040, 18.96.020, or 19.28.041. We disagree because the 1967 version of RCW 4.16.300 applies here.

In 2004, the legislature amended RCW 4.16.300 by adding the following language:

> This section is specifically intended to benefit persons having performed work for which the persons must be registered or licensed under RCW 18.08.310, 18.27.020, 18.43.040, 18.96.020, or 19.28.041, and shall not apply to claims or causes of action against persons not required to be so registered or licensed.

LAWS OF 2004, ch. 257, § 1 (codified at RCW 4.16.300).

However, in *Cameron*, Division One of this court held that the version of RCW 4.16.300 in effect when substantial completion of construction occurred applies, not the version in effect when the claim accrued. 8 Wn. App. 2d at 805. The court pointed out that the date of substantial completion starts the six-year period after which any claim is barred and that the statute of repose can bar a claim before it accrues. *Id.* at 806. The court concluded that "the subject matter and plain language of the statute support using the date of substantial completion to determine which version of the statute of repose applies." *Id.*

We agree with *Cameron*. If the six-year period following substantial completion has passed and all claims are barred, it would make no sense to allow a subsequent amendment to RCW 4.16.300 to essentially reinstate those claims. Under this analysis, the 1967 version of the RCW 4.16.300 applies here because substantial completion occurred by 1972. Therefore, the provision on which the Browns rely does not apply here and we reject their argument.

17

CONCLUSION

We affirm the trial court's grant of summary judgment in favor of Parsons and Brand.

MAXA, J.

We concur:

LEE, C.J.

GLASGOW, J.